**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| R. P. SMALL CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No.: 4:20-cv-01490 |
| v. | § | |
| | § | |
| THE LAND DEPARTMENT, INC.; | § | |
| CYPRESS ROCK LAND SERVICES, | § | |
| LLC; FIVE STAR PETROLEUM, LLC; | § | JURY TRIAL DEMANDED |
| AND MICHAEL H. MANN, | § | |
| | § | |
| Defendants. | § | |

## R. P. SMALL CORP.'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDING.............................................................1

II.   FACTUAL BACKGROUND...........................................................................................1

III.  SUMMARY OF THE ARGUMENT ................................................................................3

IV.   RULE 9(B) & 12(B)(6) STANDARDS..............................................................................6

      A.    FAIR NOTICE REQUIREMENT – RULES 8(A) AND 9(B)...............................................6

      B.    REQUIREMENT TO STATE A CLAIM UPON WHICH RELIEF MAY BE
            GRANTED – RULE 12(B)(6) ...................................................................................8

V.    ARGUMENTS AND AUTHORITIES...............................................................................9

      A.    THE COMPLAINT PROVIDES SUFFICIENT NOTICE AS TO EACH CAUSE OF
            ACTION AND EACH DEFENDANT'S CULPABILITY.  THERE IS NO BASIS TO
            DISMISS ANY OF RPS'S TORT CLAIMS AT THIS PLEADING STAGE ..........................9

      B.    RPS SUFFICIENTLY PLED ITS FRAUD CLAIMS .......................................................11

            1.    When Did The Representations Take Place?..............................................11

            2.    Where and How Were the Representations Made? ...................................12

            3.    To Whom Were the Representations Made? .............................................12

            4.    In What Capacity Did Mann Make the Representations?..........................13

            5.    Scienter is Alleged ..................................................................................13

      C.    RPS SUFFICIENTLY PLED ITS BREACH OF FIDUCIARY DUTY CLAIMS ....................14

            1.    Mann's Long-Term Relationship with RPS Created A Fiduciary Duty
                  Personally and on behalf of TLD..............................................................14

            2.    RPS and TLD/Cypress and Mann Had Formal Agency Relationships .....15

      D.    RPS PLED SUFFICIENT DETAILS REGARDING THE ORAL CONTRACTS,
            THE EXISTENCE OF WHICH WAS EXPRESSLY ACKNOWLEDGED BY A
            TLD AND CYPRESS EMPLOYEE ...........................................................................16

E.   RPS Pled Sufficient Facts to Support Its Negligence Claim Against Each Defendant and Established An Independent Duty and an Independent Injury ...................................................................................17

    1.   Specific Facts Were Alleged to Support a Claim of Negligence..............17

    2.   Plaintiff Pled an Independent Duty Owed .................................18

    3.   Plaintiff Pled an Independent Injury ........................................18

    4.   Michael Mann Has Individual Liability for His Negligence ....................19

F.   RPS Is A Consumer As Required For His DTPA Claims...............................20

G.   RPS Sufficiently Pled A Duty to Disclose ....................................21

H.   RPS Sufficiently Pled Tortious Interference ...............................22

I.   RPS Sufficiently Pled Its Conversion Claims ...............................23

J.   RPS Sufficiently Pled Conspiracy ....................................23

K.   RPS's Claims Are Unaffected by the Economic Loss Doctrine.................23

    1.   The Economic Loss Doctrine Does Not Apply to RPS's Breach of Fiduciary Duty Claims............................................................25

    2.   The Economic Loss Doctrine Does Not Apply to RPS's Fraud Claims..................................................................25

    3.   The Economic Loss Rule is Inapplicable to Plaintiff's Negligence Claims....................................................................26

    4.   RPS's DTPA claims are not barred by the economic loss doctrine or a "mere breach of contract" argument ........................................27

VI.   CONCLUSION......................................................................28

## <u>TABLE OF AUTHORITIES</u>

### <u>*Cases*</u>

*Abetter Trucking Co. v. Arizpe*,
    113 S.W.3d 503 (Tex. App. – Houston[1st Dist.] 2003, no pet.) ....................................16

*Allen v. Wal-Mart Stores, LLC*,
    907 F.3d 170 (5th Cir. 2018) .........................................................................................20

*Anderson v. Vinson Expl., Inc.*,
    832 S.W.2d 657 (Tex. App.—El Paso 1992, writ denied)................................................20

*Askanase v. Fatjo*,
    148 F.R.D. 570 (S.D.Tex.1993)........................................................................................7

*Auriti v. Wells Fargo Bank*,
    N.A. 2013 WL 2417832, *5 (S.D. Tex. – Galveston) .....................................................24

*Barcenas v. Fed. Home Loan Mortg. Co.*,
    No. H-12-2466, 2013 WL 1425138 at *3 (S.D. Tex. – Houston.) ...................................25

*BCC Merch. Sols., Inc. v. Jet Pay, LLC*,
    129 F.Supp. 3d 440 (N.D. Tex. 2015) .............................................................................27

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 S.Ct. 1955 L.Ed.2d 929 (2007)................................................................ 8-9

*Bradford v. Vento*,
    48 S.W.3d 749 (Tex. 2001)..............................................................................................21

*Campbell v. Wells Fargo Bank*,
    781 F.2d 400 (5th Cir. 1986) ............................................................................................6

*Conley v. Gibson*,
    355 U.S. 41 S.Ct. 99, 2 L.Ed.2d 80 (1957).......................................................................8

*Crawford v. Ace Sign, Inc.*,
    917 S.W.2d 12 (Tex. 1996).......................................................................................23, 27

*Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*,
    823 S.W.2d 591 (Tex.1992)........................................................................................ 14-15

*Critical Path Resources, Inc. v. Huntsman International, LLC*,
    2020 WL 1291327 (Tex. App. – Beaumont) ...................................................................21

*Cuvillier v. Sullivan*,
   503 F.3d 397 (5th Cir.2007) ....................................................................................10

*Doe v. Boys Clubs*,
   907 S.W.2d 472 (Tex. 1995)....................................................................................20

*Doran v. Wells Fargo Bank*,
   2012 U.S. Dist. LEXIS 42805, *15 (Haw. Dist. Ct. March 28, 2012) ............................11

*Erickson v. Pardus*,
   551 U.S. 89 S.Ct. 2197 L.Ed.2d 1081 (2007)(per curiam) ..................................................6

*FinishMaster, Inc. v. Richard's Paint and Body Shop, LLC*,
   2012 WL 2376218 (W.D. Tex. 2012).......................................................................25

*Formosa Plastics Corp. United States v. Presidio Eng'Rs & Contrs.*,
   960 S.W.2d 41 (Tex. 1998).................................................................................. 25-26

*Freitas v. Wells Fargo Home Mortg., Inc.*,
   703 F.3d 436 (8th Cir. 2013) ..................................................................................11

*Frith v Guardian Life Ins. Co. of America*,
   9 F.Supp.2d 734 (S.D. Tex. 1998) .............................................................................7

*Garcia v. Boyar & Miller, P.C.*,
   No. 3:06-CV-1936-D *et. al.*, 2007 WL 248572, at *4 (N.D. Tex. Aug. 28, 2007) ............7

*Hallmark v. Port/Cooper–T Smith Stevedoring Co.*,
   907 S.W.2d 586 (Tex.App.—Corpus Christi 1995, no writ))...........................................15

*Hoggett v. Brown*,
   971 S.W.2d 472 (Tex. App. 1997)....................................................................... 14-15

*Home Builders Association of Mississippi, Inc. v. City of Madison, Miss.*,
   143 F.3d 1006 (5th Cir.1998) ....................................................................................8

*Home Capital Collateral, Inc. v. FDIC*,
   96 F.3d 760 (5th Cir.1996) .......................................................................................8

*Hurd v. BAC Home Loans Servicing, L.P.*,
   880 F. Supp. 2d 747 (N.D. Tex. 2012) ......................................................................24

*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) ....................................................................................8

*Jim Walter Homes, Inc. v. Reed,*
    711 S.W.2d 617 (Tex. 1986)........................................................................26

*Johnson v. Brewer & Pritchard, P.C.,*
    73 S.W.3d 193 (Tex. 2002)........................................................................16

*Johnston v. American Cometra, Inc.,*
    837 S.W.2d 711 (Tex. App.-Austin 1992, writ denied).................................20

*Kinzbach Tool Co. v. Corbett-Wallace Corp.,*
    160 S.W.2d 509 (Tex.1942)........................................................................21

*LAN/STV v. Martin K. Eby Const. Co.,*
    435 S.W.3d 234 (Tex.2014)........................................................................25

*Leitch v. Hornsby,*
    935 S.W.2d 114 (Tex. 1996)........................................................................19

*Mahone v. Addicks Util. Dist. Of Harris County,*
    836 F.2d 921 (5th Cir.1988) .........................................................................9

*Malina v. Gonzales,*
    994 F.2d 1121 (5th Cir. 1993) ......................................................................8

*Nabors Drilling, Inc. v. Escoto,*
    288 S.W. 3d 401 (Tex. 2009).......................................................................17

*Roquemore v. Ford Motor Co.,*
    290 F.Supp.130 (N.D.Tex. 1967) .................................................................21

*Rosenzwieg v. Azurix Corp.,*
    334 F.3d 854 (5th Cir. 2003) ........................................................................6

*Ryan v. Brookdale Int'l Sys. Inc.,*
    CIV. A. H-06-01819, 2008 WL 2405970, *12 (S.D. Tex. June 11, 2008)....................13

*Salek v. Suntrust Mortg. Inc.,*
    2018 U.S. Dist. LEXIS 133396 (S.D. Tex. Aug. 8, 2018)...............................27

*SCS Builders, Inc. v. Searcy,*
    390 S.W.3d 534 (Tex. App. – Eastland 2012)...............................................27

*Sharyland Water Supply Corp. v. City of Alton,*
    354 S.W.3d 407 (Tex. 2011).......................................................................24

*Schlumberger Tech. Corp. v. Swanson,*
    959 S.W.2d 171 (Tex. 1997).......................................................................14

*Schouest v. Medtronic, Inc.*,
    92 F. Supp. 3d 606, FN2 (S.D. Tex. 2015) ........................................................11

*Southwestern Bell Tel. Co. v. Delanney*,
    809 S.W.2d 493 (Tex. 1991)............................................................................18, 26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..........................................................................................13

*Town of Davie Police Pension Plan*,
    273 F. Supp. 3d, 650 (N.D. Tex. 2017) ............................................................7

*Townsend v. Univ. Hosp.-Univ. of Colo.*,
    83 S.W.3d 913 (Tex.App.-Texarkana 2002, pet. denied) ................................15

*Tuchman v. DSC Communications Corp.*,
    14 F.3d 1061 (5th Cir.1994) ...........................................................................8

*United States ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) .......................................................... 6-7, 10, 13

*United States ex rel. Johnson v. Shell Oil Co.*,
    183 F.R.D. 204 (E.D. Tex. 1998).....................................................................7

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) ..........................................................................6

*Washington v. Patterson-UTI Energy, Inc.*,
    2016 U.S. Dist. LEXIS 70475 at *8-9 (W.D. Tex. May 31, 2016) .................10

### ***Rules and Statutes***

Fed. R. Civ. P. 8 ...........................................................................................4-6, 9-11

Fed. R. Civ. P. 9 ...................................................................................................4-12

Fed. R. Civ. P. 12 ............................................................................................4-6, 8-10

Tex. Bus. & Com. Code § 17.45...............................................................................20

### ***Other Authorities***

Wright & Miller, *Federal Practice & Procedure* § 1291 (1st ed.1969).........................7

Plaintiff R. P. Small Corp. ("RPS") files this Response to the Motion to Dismiss R. P. Small Corp.'s Second Amended Complaint (Dkt. 34) filed by The Land Department, Inc. ("TLD"), Cypress Rock Land Services, LLC ("Cypress") and Michael H. Mann (collectively "Mann Defendants").[1]

## I.
## NATURE AND STAGE OF THE PROCEEDING

On April 27, 2020, RPS filed its Original Complaint. (Dkt. 1). The Mann Defendants filed a Motion to Dismiss the Original Complaint. (Dkt. 9). RPS filed a First Amended Complaint (Dkt. 13) and a Response to Defendants' Motion to Dismiss. (Dkt. 10). The Mann Defendants filed a Motion to Dismiss RPS's First Amended Complaint. (Dkt. 17). Plaintiff filed a Second Amended Complaint. (Dkt. 21). On July 22, 2020, the Court granted RPS leave to amend its Complaint and denied Defendant's Motion to Dismiss as moot. (Dkt. 29). On August 5, 2020, the Mann Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint, to which RPS now responds.

## II.
## FACTUAL BACKGROUND

Richard P. Small ("Mr. Small"), President of RPS, met Michael H. Mann ("Mr. Mann") over twenty years ago. (Dkt. 21, ¶8). The two men began working together on business dealings and became good friends. *Id.* As Mr. Small grew older[2], he relied more and more on the younger Mr. Mann to handle transactions and make business decisions in their joint undertakings. *Id.* Mr. Small trusted Mr. Mann. *Id.* Mr. Mann conceived of the idea to develop a wildcat (exploratory) well in Walker County after learning about some leases for sale in that area. *Id.* On January 1,

---

[1] RPS responds relying solely on the facts set forth in its Second Amended Complaint (Dkt. 21) and reserves its rights to assert additional facts and causes of action uncovered through discovery.
[2] Mr. Small celebrated his 91st birthday this past May.

2017, RPS signed a written contract with The Land Department ("TLD").  **TLD was (and if it exists still is) wholly-owned and operated by Mr. Mann**.  TLD agreed in the written contract to provide landman services to find and acquire leases and mineral rights.  *Id.* at ¶10.  Mr. Small relied on Mr. Mann's representations – individually and on behalf of his wholly owned and operated company TLD – that he and TLD had the experience and skill necessary to handle operator's services on a drilling project.  Mr. Small entered into an oral agency agreement with Mr. Mann *and* TLD, delegating those services to them.  *Id.* at ¶13-14.  On July 17, 2017, Mr. Mann, acting as an agent for RPS, signed a contract with Five Star Petroleum to be the drilling contractor for the Norma #1 well.  *Id.* at ¶15; *see also* Exhibit 2 to Complaint.  This document is solid evidence of the existence of an agency agreement.

After the majority of the leases were obtained, Mr. Small brought together business partners to fund drilling the Norma #1 on the Trinity Bend Prospect.  *Id.* at ¶11A.  These investors entered into a Joint Operating Agreement ("JOA"), with RPS named as Operator.  *Id.* at ¶16, *see also* Exhibit 3 to Complaint.

As described above, Mann *and* TLD acted as agents for Operator RPS in performing operator's duties.  *Id.* at ¶¶17-20.  Problems arose due to TLD's poor accounting procedures, causing other participants to refuse to pay.  *Id.* at ¶¶ 24-31.  Despite these issues, TLD charged ahead with attempts to drill a sidetrack that was promised to be successful.  *Id.* at ¶ 38.  Several participants, disgruntled with TLD's poor handling of cash calls and joint interest billings ("JIBs"), chose to non-consent the drilling of the sidetrack, leaving the rest of the participants to pay the expenses.  *Id.*

In October 2019, Mr. Mann decided to cease doing business as TLD and began operating as Cypress Rock Land Services, LLC ("Cypress Rock").  **Mr. Mann is the sole member of**

2

**Cypress Rock**.  *Id.* at ¶ 32.  **Cypress Rock acted as a continuation of TLD, using the same employees, office space, and performing the tasks previously done by TLD**.  *Id.*  Mr. Mann represented to RPS that he and his employees (formerly of TLD, now of Cypress) had the expertise to continue acting as operator's agents in drilling the well.  *Id.* at ¶¶33-35.  Mr. Mann knew these statements were false, as evidenced by TLD's egregious billing practices, mismanagement of projects, and failure to pay vendors during the first two years of the project.  *Id.* at ¶33.

Ultimately, TLD's (and, later, Cypress') poor accounting procedures resulted in RPS being sued by vendors who had never been paid by TLD or Cypress, despite large amounts of money sent to TLD (and, later, Cypress) by RPS.  *Id.* at ¶ 39.  TLD (and, later, Cypress) always paid itself first, often failing to pay vendors associated with the actual drilling of the well.  *Id.* at ¶ 40.  A significant amount of money is still due the vendors.  *Id.* at ¶ 39.  In addition, RPS was required to pay money out of its own funds to settle with certain vendors and cover administrative costs for wrapping up and plugging the Norma #1.  *Id.*  In addition to economic damages, RPS suffered damage to its reputation and goodwill as a result of the actions of each of the Mann Defendants described above.  *Id.* at 44.  Since taking over the administration of the operations, RPS has found mistakes in the accounting, failures in regulatory filings, multiple fines from the Texas Railroad Commission, and numerous notices for unpaid invoices, taxes, and various other bills.

### III.
### SUMMARY OF THE ARGUMENT

Mr. Mann, TLD, and (later) Cypress[3], profited from their associations with Mr. Small and RPS.  Mr. Mann *and* his companies falsely proclaimed their abilities to act as operator's agents in order to maintain their lucrative association with RPS.  Lining their own pockets, TLD, (later)

---

[3] Cypress' involvement began in October 2019 until it was fired by RPS in April 2020. (Dkt. 21, ¶ 32-36).

Cypress, *and* Mr. Mann benefitted from their scheme to have RPS fund their business.   The Complaint (Dkt. 21) alleges that in the past few years, at the instigation and under the direction of Mr. Mann, TLD, (later) Cypress, *and* Mr. Mann engaged in a fraudulent scheme to induce RPS to entrust its operations and funds to Mr. Mann, TLD, and (later) Cypress.   Mr. Mann, TLD, and (later) Cypress repeatedly lied or remained silent when they should have spoken, concealing their fraudulent and/or grossly negligent accounting practices and performance.   Not once did Mr. Mann, or TLD, or Cypress, call a halt to drilling or operations when financial problems arose, nor did any of them inform RPS how egregious the financial mismanagement had become.   Rather, Mr. Mann repeated his false representations to Mr. Small – encouraging Mr. Small to continue the agency agreement with Cypress after Mr. Mann chose to cease doing business as TLD.   Mr. Mann, TLD, *and* (later) Cypress prioritized payment by the joint interest funds of their own inflated invoices.   Most of the communications from Mr. Mann, TLD, and (later) Cypress pointed to JOA participants as the problem, never admitting that their own lackadaisical mishandling of funds was the source of financial crisis.   These pervasive misrepresentations are a major portion of the instant action.

The Mann Defendants argue that RPS's claims do not satisfy Rule 8(a), 9(b), and 12(b)(6) standards.   The Mann Defendants are wrong.   RPS's claims are extensive, detailed, and thoroughly well pled – much more than the requisite "notice pleadings."   RPS complied with the requirements of Federal Rules of Civil Procedure 8(a) and 9(b) by identifying the "who, what, when, where, and how" required for a pleading alleging fraud.

> **Who** – Mr. Mann, TLD, and (later) Cypress.  Mr. Mann made false representations to Richard Small, individually and on behalf of TLD (and, later, Cypress) regarding his and his companies' abilities to perform certain tasks.  Complaint (Dkt. 21), ¶¶8, 13, 14, 19, 20, 21, 23, 24, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39 & 40;
>
> **What** – The facts of the Mann Defendants' actions are laid out chronologically with more than enough background to determine each of the specific allegations

regarding what happened and why *each* of the Mann Defendants *individually* is liable.  Complaint (Dkt. 21), ¶¶8, 13, 14, 19, 20, 21, 23, 24, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39 & 40;

**When** – From shortly before January 1, 2017 (when Mr. Mann first conceived of the idea to develop a wildcat well in Walker County) until April 2020 (when RPS fired the Mann Defendants) Complaint (Dkt. 21), ¶¶8, 10, 15 & 33.  Throughout this time, it was falsely represented that the Mann Defendants were qualified to act as agents for the operator and were performing properly.

**Where** – Mr. Mann, TLD, and Cypress are all located in <u>Houston, Texas</u>.  Richard Small and RPS are located in <u>Tulsa, Oklahoma</u>.  Complaint (Dkt. 21), ¶¶1, 2, 3 & 5.  Most of the communications took place by <u>phone and email</u>.

**How** – RPS provided specific notice regarding the precise fraudulent misrepresentations alleged, including specific acts of double billing, specific faulty accounting procedures, and specific missing funds.  RPS provided a sampling of particular invoices which showed – to the penny – evidence of overbilling by <u>TLD</u> and (later) <u>Cypress</u>.  Complaint (Dkt. 21), all paragraphs.

The specific facts pled give more than sufficient notice of the claims alleged – breach of fiduciary duty, breach of contract, fraud, negligence, violation of the Texas Deceptive Trade Practices Act ("DTPA"), tortious interference, conversion, and conspiracy.  Mr. Mann's attempt to shed personal liability for his actions rings hollow.  Mr. Mann was a longtime, intimate friend to Mr. Small and, as Mr. Small grew older, was trusted by Mr. Small to make many business decisions regarding their joint business activities.  <u>Mr. Mann</u>, individually and on behalf of <u>TLD</u> (and later <u>Cypress</u>) agreed to serve as operator's agent regarding a certain drilling project.  Both the long-time business relationship of trust and the agency agreement give rise to a fiduciary duty owed by <u>Mr. Mann</u> and his wholly owned and controlled companies to Mr. Small and RPS, not only to perform the work competently and with reasonable skill, but also to maintain and account for the funds coming into <u>TLD</u> and (later) <u>Cypress</u> from RPS and JOA participants.

Plaintiff's live pleadings are replete with more than sufficient facts to provide fair notice of the basis of each alleged cause of action against *each* defendant, and more than satisfy the requirements of Rules 8(a), 9(b) and 12(b)(6).  Defendants' Motion to Dismiss should be denied.

**IV.**
**RULE 9(B) & 12(B)(6) STANDARDS**

A complaint must be liberally construed in favor of the plaintiff, and all facts pled in the complaint must be taken as true. *Rosenzweig v. Azurix Corp.*, 334 F.3d 854, 865 (5th Cir. 2003); *Campbell v. Wells Fargo Bank*, 781 F.2d 400, 442 (5th Cir. 1986).

**A.    FAIR NOTICE REQUIREMENT – RULES 8(A) AND 9(B)**

Federal Rule of Procedure 8(a)(2) provides that "**[s]pecific facts are not necessary; the [allegations] need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests**.**" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)(per curiam). Federal Rule of Civil Procedure 9(b) adds: "In alleging fraud or mistake, a party must state with particularity the *circumstances* constituting fraud or mistake." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)(emphasis added).

The Fifth Circuit pointed out that Rule 9(b) "supplements but does not supplant Rule 8(a)'s notice pleading." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009). The Fifth Circuit in *Grubbs* further explained Rule 9(b) as follows:

> "Rule 9(b)'s ultimate meaning is context specific" and thus there is no single construction of Rule 9(b) that applies in all contexts. Depending on the claim, a plaintiff may sufficiently "state with particularity the *circumstances* constituting fraud or mistake without including all the details" of any court-articulated standard—it depends on the elements of the claim at hand.

*Id.* at 188 (emphasis added). Federal Rule of Civil Procedure 9(b) "does not reflect a subscription to fact pleading, and requires only simple, concise and direct allegations of the *circumstances* constituting fraud…the 'time place, contents, and identity' standard is *not a straitjacket* for fraud pleading requirements." *Id.* at 188 & 190 (emphasis added). The key issue for heightened fraud pleadings is "whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead

6

seeks the opportunity to search out actionable wrongs." *Town of Davie Police Pension Plan* 273 F. Supp. 3d, 650, 660 (N.D. Tex. 2017) (quoting *Garcia v. Boyar & Miller, P.C.*, No. 3:06-CV-1936-D *et. al.*, 2007 WL 248572, at *4 (N.D. Tex. Aug. 28, 2007); *see also United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009) (noting the fraud pleading requirement "prevents nuisance suits and the filing of baseless claims as a pretext to gain access to a 'fishing expedition.'").

"'[A]lthough Rule 9(b) calls for fraud to be pleaded with particularity, <u>the allegations must still be as short, plain, simple, direct, and concise as is reasonable under the circumstances.' Rule 9(b) should not be read so as to obliterate this basic pleading philosophy</u>." *Frith v Guardian Life Ins. Co. of America*, 9 F.Supp.2d 734, 742 (S.D. Tex. 1998) (quoting Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1291 (1st ed.1969)). "<u>A complaint need not state all facts pertinent to a case in order to satisfy the requirements of Rule 9(b)....</u> Thus, the focus of a Rule 9(b) inquiry should be whether, given the nature and facts of the case and the circumstances of the parties, the pleading in question is sufficiently particular to satisfy the purposes of Rule 9(b)." *Frith* at 742; *see also* Wright & Miller, §§ 1297 and 1298. <u>In every case based on fraud, Rule 9(b) requires the plaintiff to allege as to each individual defendant "the *nature* of the fraud, *some* details, a *brief* sketch of how the fraudulent scheme operated, when and where it occurred, and the participants.</u>" *Askanase v. Fatjo*, 148 F.R.D. 570, 574 (S.D.Tex.1993) (emphasis added).

"**[I]t has been widely held that where the fraud allegedly was complex and occurred over a period of time, the requirements of Rule 9(b) are less stringently applied**." *United States ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 206 (E.D. Tex. 1998) (emphasis added). RPS alleges that fraud and misrepresentation by *each* of the Mann Defendants occurred over the course of several years. The occurrences of fraud are complex, involving a lengthy pattern of

mishandling of funds and JIB accounting, mishandling of drilling the well, inflated charges, and accounting malfeasance.

RPS's claims allege that the Mann Defendants (individually <u>Mr. Mann</u>, <u>TLD</u>, and later <u>Cypress</u>) (***who***), submitted inflated invoices and falsely claimed competence in drilling wells (***what***) at their offices in <u>Houston</u> and at the <u>Norma #1 well</u>, usually over the telephone to RPS in <u>Tulsa, Oklahoma</u> (***where***) continuously from 2016 to the end of the Mann Defendants' role in the project (***when***), falsely overbilling and seeking reimbursement for their own shoddy work – always paying themselves first (***how***).  The Court should not dismiss RPS's claims at this pleading stage because RPS's pleadings, *taken as a whole,* more than sufficiently pled the "who, what, when, where and how" to satisfy Rule 9(b)'s fair notice standards.

## B.   REQUIREMENT TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED – RULE 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) requires a plaintiff to state a claim upon which relief may be granted.  To survive a motion to dismiss, a plaintiff must merely plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570-72 (2007).  Courts accept "all well pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see Malina v. Gonzales*, 994 F.2d 1121, 1135 (5th Cir. 1993).

Unlike a motion for summary judgment, **a motion to dismiss should be granted *only* when it appears *without a doubt* that the plaintiff can prove *no* set of facts in support of his claims that would entitle him to relief**.  *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)(emphasis added); *Home Builders Association of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998) (applying the standard in the context of Rule 12(b)(1)); *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 764 (5th Cir.1996); *Tuchman*

*v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994) (both applying the standard in the context of Rule 12(b)(6)).  <u>Dismissal is appropriate *only* if the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)</u>."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)(emphasis added, internal citations omitted).  The United States Court of Appeals for the Fifth Circuit held that **dismissal for failure to state a claim is disfavored and will be appropriate only in *rare* circumstances**.  *Mahone v. Addicks Util. Dist. Of Harris County*, 836 F.2d 921, 926 (5th Cir.1988)(emphasis added).

## V.
## ARGUMENTS AND AUTHORITIES

**A.    THE COMPLAINT PROVIDES SUFFICIENT NOTICE AS TO EACH CAUSE OF ACTION AND EACH DEFENDANT'S CULPABILITY.  THERE IS NO BASIS TO DISMISS ANY OF RPS'S TORT CLAIMS AT THIS PLEADING STAGE.**

RPS's Complaint details how the Mann Defendants failed miserably as agents for RPS. Mr. Mann falsely represented that he and his companies (first TLD, then Cypress) had the requisite experience to perform as agents for an operator on a well drilling project.  Mr. Mann and his companies had no prior experience in this regard.  Mr. Mann and his companies concealed their mismanagement and general inability to perform properly with false reporting and fraudulent billing practices.   RPS's Complaint describes the fraudulent scheme of each of the Mann Defendants, and contains more than enough factual allegations to state plausible claims for all torts alleged.  Despite the low bar set by Rules 8(a), 9(b), and 12(b)(6), the Mann Defendants parrot the same arguments throughout their brief.  <u>None</u> of these rules require the level of pleadings detail sought by Defendants.

The facts put forth in Paragraphs 8-40, as far as humanly possible, set out for the Mann Defendants and the Court "what role each allegedly plays in Plaintiffs' claims."  RPS's Complaint

precisely explains the "role each Defendant played" in paragraph 153. *See Washington v. Patterson-UTI Energy, Inc.*, 2016 U.S. Dist. LEXIS 70475 at *8-9 (W.D. Tex. May 31, 2016). A plaintiff is not required to submit proof at this stage of a proceeding, and the Mann Defendants' insistence that more than fair notice of a claim be pled is simply wrong. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) ("To require these details at pleading is one small step shy of requiring production of actual documentation with the complaint, a level of proof not demanded to win at trial and significantly more than any federal pleading contemplates" (where the defendant's motion to dismiss alleged that the plaintiff must provide "exact dollar amounts, billing numbers or dates.").[4] The facts presented by RPS exceed the notice requirements of Rules 8(a), 9(b) and 12(b)(6) which require only that RPS "<u>must simply articulate the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right of relief above the speculative level</u>." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (emphasis added).   The facts set out in RPS's Complaint are straightforward and

---

[4] The Fifth Circuit in *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) further states: "Appellees retort that…Rule 9(b) demands that it is the contents of the presented bill itself that must be pled with particular detail and not inferred from the circumstances.  We must disagree with the sweep of that assertion.  Stating "with particularity the circumstances constituting fraud" does not necessarily and always mean stating the contents of the bill.  The particular circumstances constituting the fraudulent presentment are often harbored in the scheme. A hand in the cookie jar does not itself amount to fraud separate from the fib that the treat has been earned when in fact the chores remain undone.  Standing alone, raw bills – even with numbers, dates and amounts – are not fraud without an underlying scheme to submit bills for unperformed or unnecessary work.  It is the scheme in which particular circumstances constituting fraud may be found that make it highly likely that fraud was consummated through the presentment of false bills." *Id.* at 190.  Although *Grubbs* is a False Claims Act case, it tends to be cited for its analysis of Rule 9(b).  The analogy presented in this citation directly matches the actions of Mr. Mann and TLD/Cypress.  Here, the specific individual moments may not in themselves constitute fraud as much as the overall scheme to bilk RPS of funds so that TLD/Cypress could line its own pockets while "the chores remain undone."  Just as in *Grubbs*, the Motion to Dismiss the claims against Mr. Mann, TLD and Cypress should be denied because the Complaint meets the Rule 9(b) requirements that a complaint sufficiently define its claims.

unambiguous, providing far more than enough to rise above a "speculative level."  Not only does the Complaint provide specifics as to who committed each act, and when how and where the acts were committed, the Complaint provides enough information to infer scienter by the circumstances which constitute the fraud.

Defendants' contention that RPS's claims should be dismissed for failure to provide notice (FED. R. CIV. P. 8(a)), failure to plead with specificity (FED. R. CIV. P. 9(b)), or failure to state a claim (FED. R. CIV. P. 12(b)), are completely without merit.

**B.     RPS SUFFICIENTLY PLED ITS FRAUD CLAIMS.**

RPS's Complaint provides clear, precise allegations providing "who, what, when, where, how and why" for each of the claims asserted against the Mann Defendants.

### 1.     When Did The Representations Take Place?

The RPS Complaint's allegations of place and time are more than sufficient to put the Mann Defendants on notice of the claims against them.  A plaintiff is not required to plead the specific times and places where fraudulent representations occurred.  *Schouest v. Medtronic, Inc.*, 92 F. Supp. 3d 606, FN2 (S.D. Tex. 2015) (Miller, J.) citing *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436 (8th Cir. 2013) which cites *Doran v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 42805, *15 (Haw. Dist. Ct. March 28, 2012).  The crux of the "pleading with particularity" requirement is that the plaintiff should provide the defendant with enough information to put the defendant on notice of the alleged misconduct.  RPS has done so here.

In this case, RPS alleges an ongoing fraudulent scheme and repeated breaches of fiduciary duty instigated by Mr. Mann, TLD, *and* (later) Cypress.  The fraudulent activity started in December 2016 and continued until April 2020.  The events giving rise to a fiduciary duty began before then, when Mr. Mann started exerting his influence on a much older Mr. Small, taking more

11

and more control of Mr. Small's and RPS's business dealings in Texas.  (Dkt. 21 ¶8).  This relationship of trust helped lay the foundation for Mann's fraudulent inducement of Mr. Small to enter into the oral agency agreement.  Specific acts of fraud are alleged in the Complaint.  The precise dates of double-billed cash calls, JIBs, and inflated invoices, many of which are described in detail in the Complaint, will be provided during discovery.  This stage of the proceeding does not require marshalling and presenting trial evidence.  Pleadings must only "state with particularity the *circumstances* constituting fraud or mistake."  FED. R. CIV. P. 9(b) (emphasis added).  RPS has done so.

### 2.    Where and How Were the Representations Made?

RPS states in ¶7 of its Complaint (Dkt. 21) that "events giving rise to the claims occurred in *this district*."  (Emphasis added.)  TLD/Cypress' offices and Mann's residence are located in Houston, Texas.  (Dkt. 21, ¶¶2, 3, 5).  RPS's office is located in Tulsa, Oklahoma.  (Dkt. 21, ¶6). Defendants' actions also occurred at the Norma #1 well located in Walker County, Texas.  (Dkt. 21, ¶¶8, 79-80).  Most of the communication between the parties occurred via telephone and email. RPS cannot state exactly where Defendants were located when they sent emails or took calls on their cellular phones, but it was likely in their offices or someplace else in Houston, Texas.  If Defendants need to know exactly where they were at those moments, perhaps their cellular phone providers can provide them that information.

### 3.    To Whom Were the Representations Made?

Mr. Mann, individually, and as the representative of TLD and (later) Cypress made false representations to Richard Small, his longtime friend and business associate, to induce Mr. Small into granting Mr. Mann and Mr. Mann's companies authority to act as agents for RPS in performing various operator tasks related to the Norma #1 well.  (Dkt. 21, ¶¶ 8, 13, 19, 33).

### 4.    In What Capacity Did Mann Make the Representations?

The Complaint identifies specific instances where <u>Mr. Mann</u> made representations individually (Dkt. 21, ¶¶8, 13, 14, 19, 30, 33, 37, 39, & 40), speaking for <u>TLD</u> (Dkt. 21, ¶¶13, 14, 19, 30 & 40), and (later) speaking for <u>Cypress</u> (Dkt. 21, ¶¶33, 37, 39, 40).  **<u>As described in the Complaint, each of Mr. Mann's two companies – TLD and Cypress – had the same owner (Mr. Mann), the same address, and the same employees.  At one point, TLD was simply replaced by Cypress.  Mr. Mann remained in charge and was the sole spokesman</u>**.  The Complaint specified individual actions as far as possible in Paragraphs 8-40, but many of the acts of Mr. Mann were both individually and on behalf of TLD and (later) Cypress.  <u>No clear line of distinction exists regarding certain actions</u>.  The Mann Defendants are fully on notice of the claims against them by the pleadings.

### 5.    Scienter is Alleged.

To plead scienter, "<u>a plaintiff…must plead facts rendering inferences of scienter at least as likely as any plausible opposing inference</u>."  *Grubbs* at FN29 citing to *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 328 (2007).  In *Ryan v. Brookdale Int'l Sys. Inc.*, CIV. A. H-06-01819, 2008 WL 2405970, *12 (S.D. Tex. June 11, 2008) the Court noted, "Scienter may be averred generally, but also requires the plaintiff to set forth facts that support an inference of fraud."  "The plaintiff must point to allegations that the defendant actually knew the statement was false."  *Id.*  In the Complaint, RPS specifically alleges that <u>Mr. Mann</u>, <u>TLD</u>, *and* (later) <u>Cypress</u> fraudulently made representations to RPS that they were experienced and therefore fully capable of acting as a drilling operator's agent, including performing joint account billing, when they knew they had no prior experience doing so.  Each of them falsely represented that certain sums of money were due when they were not, when they knew that RPS had already been billed

for, and paid for, the work.  RPS's funds were misappropriated by each of the Mann Defendants. Each of the Mann Defendants intentionally concealed pertinent information pertinent from RPS with the specific intent to induce RPS to continue providing funds, which each of the Mann Defendants used for their personal gain.

## C.     RPS SUFFICIENTLY PLED ITS BREACH OF FIDUCIARY DUTY CLAIMS.

There are two types of fiduciary relationships: informal fiduciary relationships or "confidential relationships" that may arise from moral, social, domestic, or personal relationships and formal fiduciary relationships that arise as a matter of law, such as principal-agent relationships.  *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp*., 823 S.W.2d 591, 593–94 (Tex.1992).  Both types have been properly pled in this case.

### 1.     Mann's Long-Term Relationship with RPS Created A Fiduciary Duty Personally and on behalf of TLD.

The long-time personal relationship of trust between Mr. Small and Mr. Mann regarding joint business practices created a fiduciary duty:

> A confidential relationship exists where influence had been acquired and abused, and confidence has been reposed and betrayed.  A person is justified in placing confidence in the belief that another party will act in his or her best interest only where he or she is accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business relationship, as well as a personal relationship.

*Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App. 1997).  Texas law recognizes a fiduciary duty where "there [was] a fiduciary relationship before, and apart from, the agreement made the basis of the suit."  *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).  A confidential relationship is one "where one person trusts in and relies upon another, whether the relation is moral, social, domestic or merely personal."  *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp*., 823 S.W.2d 591, 593-94 (Tex.1992).  Whether an informal relationship rises to the

14

level of a fiduciary relationship is often a question of fact. *Id*. at 594. Generally, "[a] fiduciary duty requires the fiduciary to place the interest of the other party before his or her own." *Hoggett*, 971 S.W.2d at 487 (citing *Crim,* 823 S.W.2d at 593–94; *Hallmark v. Port/Cooper–T Smith Stevedoring Co*., 907 S.W.2d 586, 592 (Tex.App.—Corpus Christi 1995, no writ)).

Mr. Small and Mr. Mann had a longstanding personal and professional relationship of trust in joint business activities. Mr. Small relied heavily on Mr. Mann to represent RPS in many prior business deals in Texas, primarily regarding mineral interests.[5] This created a fiduciary duty beyond the duties created by virtue of the agency agreement.

Mr. Mann breached each of the fiduciary duties listed in the Complaint, including duties of (1) loyalty and utmost good faith, (2) candor, (3) refraining from self-dealing, (4) acting with integrity, (5) dealing fairly and honestly with RPS, and (6) disclosing material facts to RPS. (Dkt. 21, ¶¶31, 41-44). Mr. Mann breached these duties in many ways, including lying to Richard Small about his experience and expertise, lying to Richard Small about the experience and expertise of his employees at TLD and (later) Cypress, hiding the massive accounting debacle created by the grossly negligent or intentional acts of his employees at TLD and Cypress, submitting inaccurate accounts of the time he spent on the project for billing to RPS, comingling his funds with those of RPS and the JOA participants, and instructing his employees to place priority on payments to his wholly-owned companies. (*See* Dkt. 21, ¶¶13, 19, 24, 30, 33, 39 & 40).

## 2.     RPS and TLD/Cypress and Mann Had Formal Agency Relationships.

An agent is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. *Townsend v. Univ. Hosp.-Univ. of Colo*., 83 S.W.3d 913, 921

---

[5] Mr. Mann's company, R.A.M. Royalty, is one of the joint venture participants and was also a participant in the lease purchases prior to the JVA/JOA for Trinity Bend.

(Tex.App.-Texarkana 2002, pet. denied).  An agency relationship creates a fiduciary duty. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002).  An agent generally has a fiduciary duty to act for the benefit of his principal in all matters connected with the agency. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002); *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex. App. – Houston[1st Dist.] 2003, no pet.).

The parties had an agency agreement specific to the project in question.  Mr. Mann, TLD and (later) Cypress agreed to act as operator's agents in performing the tasks of an operator on the project.  The Five-Star Petroleum drilling contract signed by Mann on behalf of RPS is proof of the existence of the agency agreement.  The complaint is replete with facts demonstrating TLD and Cypress's agency undertaking – issuing cash calls, executing vendor contracts, etc.  By virtue of the agency relationship with RPS, Mann, TLD and (later) Cypress owed duties of (1) loyalty and utmost good faith, (2) candor, (3) refraining from self-dealing, (4) acting with integrity, (5) dealing fairly and honestly with RPS, and (6) disclosing material facts to RPS.  (Dkt. 21, ¶¶41-44).  TLD (and later) Cypress breached those duties when they overcharged RPS, overbilled for work performed, placed priority on paying their own invoices, failed to properly manage funds, comingled funds, concealed their gross mismanagement of funds, concealed the gross inability of Five Star to perform drilling as required, concealed their failures to pay timely invoices, and concealed their priority payment of their own invoices.  These allegations are specified, in detail, in the Complaint.

### D.   RPS PLED SUFFICIENT DETAILS REGARDING THE ORAL CONTRACTS, THE EXISTENCE OF WHICH WAS EXPRESSLY ACKNOWLEDGED BY A TLD AND CYPRESS EMPLOYEE.

RPS's Complaint provides sufficient details to establish the oral agency contracts entered into between Michael Mann, his companies, and Richard Small.  Mann entered into contracts individually with RPS, and also in his representative capacity for TLD and (later) Cypress.

Michael Mann relied upon his longstanding personal business relationship with Richard Small to induce Mr. Small to enter into an oral agency contract shortly after Mr. Mann decided he wanted to develop a wildcat well. (Dkt. 21, ¶8). In early 2017, Mr. Mann and his company agreed to act as RPS's agent in operating the project. (*Id.* at ¶13-14, 17, 19). <u>Mann and his employees were well aware of the duties they were required to perform, as evidenced by TLD's admission that it was hired "to perform numerous detailed and complicated functions.</u>" (*Id.* at ¶ 21). Mr. Mann soon began executing contracts as an agent for RPS. Mr. Mann's companies issued cash calls and JIBs to participants. Mr. Mann's companies paid their own invoices (for performance of their agency contracts) from funds received from RPS and the participants. (*Id.* at ¶¶13, 15, 24, 26, 30, 31, 34, 36-40; *see also* Exhibit 2). The agency agreement ended when RPS discovered the fraud, fired the Mann Defendants, and filed this lawsuit in April 2020. *Id.*

Michael Mann is personally liable for his breach of an oral agency agreement with RPS. Discovery may reveal additional personal liability on vendor contracts signed in his individual capacity and contracts signed without RPS's approval. Mr. Mann's signature on the Five Star Petroleum drilling agreement is bedrock evidence of the existence of a principal/agent relationship between Mr. Mann and RPS. The agreement appointing Mr. Mann as agent has been breached by his failure to perform.

**E.     RPS Pled Sufficient Facts to Support Its Negligence Claim Against Each Defendant and Established An Independent Duty and an Independent Injury.**

### 1.     Specific Facts Were Alleged to Support a Claim of Negligence.

"Negligence actions in Texas require a 'legal duty owed by one person to another, a breach of that duty and damages proximately cause by the breach.'" *Nabors Drilling, Inc. v. Escoto*, 288 S.W. 3d 401, 404 (Tex. 2009). TLD/Cypress and Mr. Mann owed a duty of care to RPS to perform their delegated work with "care, skill, reasonable expedience and faithfulness." *Id.* The Complaint

is replete with precise factual allegations supporting RPS's negligence claims against each of the Mann Defendants and demonstrating their failure to act as reasonably prudent agents for an operator regarding the oil wells at issue, including in hiring contractors, managing funds, and paying expenses.  (Dkt. 21, ¶¶ 15, 24, 29, 31, 59-62.)

**2.      Plaintiff Pled an Independent Duty Owed.**

"Liability is grounded in the public policy behind the law of negligence which dictates every person is responsible for injuries which are the reasonably foreseeable consequent of his act or omission."  *Nabors* at 404 (emphasis added).  Duty is imposed where "risk, foreseeability and the likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden [on the defendant]."  *Id.* at 405.

In this case, a duty of care existed not only due to the long-standing relationship that existed between RPS and Mr. Mann (and his companies), but also by virtue of the contractual agency relationship and the financial nature of TLD's (and, later Cypress') responsibilities.  Such a duty is imposed because of the financial risks involved in a drilling operation, the foreseeability and likelihood of serious injury or significant economic loss when services are negligently performed. Mr. Mann, TLD (and later Cypress) owed a duty of care to RPS.  That duty was adequately pled in the Complaint.

**3.      Plaintiff Pled an Independent Injury.**

RPS properly pled an independent injury caused by the Mann Defendants' negligence.  The duty to perform with "with care, skill, reasonable expedience and faithfulness" exists within every business venture – and a failure to meet those duties is the tort of negligence.  *Southwestern Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 495 (Tex. 1991).  RPS properly pled acts that were

negligently performed – including mishandling of JIB funds, accounting mistakes, overbilling, lack of due diligence in hiring practices, proffering inflated invoices, and failing to pay vendors. These duties would exist with or without a specific contract.

As an operator, RPS was and is responsible to vendors for balances due.  RPS suffered substantial injury for TLD's (and later Cypress') negligence.  The angst from the vendors was caused solely by the Mann Defendants' negligent handling of funds.  Litigation costs, settlement payments, reputational damage, and goodwill damage associated with the claims of the unpaid vendors are all independent injuries which are separate from contractual damages.

### 4.      Michael Mann Has Individual Liability for His Negligence.

"A corporate officer or agent can be liable to others…for his or her own negligence" when corporate "officer or agent owes an independent duty of reasonable care to the injured party." *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996).  Because of his longstanding relationship with RPS, and the oral agency contract, Mr. Mann owed an independent duty of reasonable care to RPS.  Mr. Small, on behalf of RPS, relied extensively on Mr. Mann's advice, information and performance.  Mr. Mann failed miserably, causing independent injuries to RPS.

In *Leitch*, the Texas Supreme Court noted that "an agent whose negligence causes an auto accident may be held individually liable along with his or her employer when driving in the course and scope of employment."  *Id.*  This is analogous to the case at bar.  Mr. Mann was in the driver's seat of TLD (and later Cypress).  RPS employed TLD (and later Cypress) *because Mr. Mann was the manager*[6] to perform services either through the agreements or through an oral agency agreement.  As the "driver" at TLD (and later Cypress), Mr. Mann had a duty of care to perform

---

[6] The only reason TLD was chosen to perform on behalf of RPS is because it is owned and managed by Mr. Mann.  The relationship between Mr. Mann and RPS is the sole reason TLD (and later Cypress) were involved at all.

the services of management in a non-negligent way, specifically regarding handling the joint accounts and the operations of drilling the well.  Mr. Mann negligently performed his services as manager at TLD (and later Cypress), injuring RPS.

The present case is different than *Allen v. Wal-Mart Stores, LLC*, 907 F.3d 170 (5th Cir. 2018), cited by the Mann Defendants.  In that case, the plaintiff "failed to plead that the employees' alleged assistance either induced reliance or increased William's risk of harm."  Here, RPS pled both – that RPS relied on Mr. Mann, and that the negligence of Mr. Mann and his companies increased RPS's risk of harm.

## F.    RPS Is A Consumer As Required For His DTPA Claims.

RPS is a consumer under the DTPA.  "A "consumer" is an individual, partnership, corporation…who seeks or acquires by purchase…any goods or services.  "Services" means work, labor, or services purchased."  Tex. Bus. & Co. Code § 17.45 (2) & (4).  *See Doe v. Boys Clubs*, 907 S.W.2d 472, 478 (Tex. 1995).

The Mann Defendants cited two cases they claim support their argument that RPS is not a consumer.  Neither case holds for the propositions the Mann Defendants claim.  The Mann Defendants cite *Anderson v. Vinson Expl., Inc.*, 832 S.W.2d 657, 665 (Tex. App.—El Paso 1992, writ denied) and *Johnston v. Am. Cometra, Inc.*, 837 S.W.2d 711, 717 (Tex. App.—Austin 1992, writ denied) to argue that a party securing the services of an operator is not a "consumer" under the DTPA.  What the two cases actually hold is that "an *investor* under an oil and gas joint operating agreement is not, as a matter of law, a "consumer" of services as contemplated within the DTPA."  *Anderson* at 665 (emphasis added).  *Johnson* explains this issue more fully: "[A] *non-operator* is not a consumer of the operator's services within the meaning of the DTPA because the services are not "purchased" but are performed *gratuitously*, the *nonoperators* reimbursing the operator only for expenses."  *Id*. at 717 (emphasis added).  That does not apply to the case at bar.

In this case, *operator* RPS retained and paid for the services of Mr. Mann and TLD (and later Cypress) (non-parties to the JOA) as agents to handle certain delegated operator duties. TLD (and later Cypress) presented invoices for its work and was paid by RPS. There was nothing "gratuitous" about the work of the Mann Defendants. TLD (and later Cypress) mishandled the funds of the project and concealed their mishandling of the funds. RPS's claims under the DTPA are proper under the DTPA.

**G.     RPS SUFFICIENTLY PLED A DUTY TO DISCLOSE.**

RPS's claims for nondisclosure are viable. RPS and Mr. Mann and TLD (and later Cypress) were in an agency relationship and also in a confidential, special relationship through which Mann, TLD and Cypress became fiduciaries to RPS. Texas law has long held that fiduciaries must make full disclosure of all material facts to their principles. *Roquemore v. Ford Motor Co.,* 290 F.Supp.130, 135 (N.D.Tex. 1967) citing *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514(Tex.1942). As fiduciaries, Mr. Mann, TLD, and later Cypress, owed a duty of full disclosure to RPS. *Critical Path Resources, Inc. v. Huntsman International, LLC,* 2020 WL 1291327 (Tex. App. – Beaumont). This included a duty to disclose truthful financial information and to disclose the various instances of mismanagement and self-dealing. *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). Mann's, TLD's and Cypress' nondisclosure amounted to fraud.

Fraud may also occur when:

a.     a party conceals or fails to disclose a material fact within the knowledge of that party,

b.     the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth,

c.     the party intends to induce the other party to take some action by concealing or failing to disclose the fact, and

d.     the other party suffers injury as a result of acting without the knowledge of the undisclosed fact.

21

*Id*. at 754-755.

Mr. Mann and TLD (and later Cypress) had a duty to disclose material facts relating to their inability to manage the operations of drilling a well. RPS had no way of knowing how badly the Mann Defendants bungled the jobs delegated to them until it began receiving complaints from nonoperators and vendors. Mr. Mann, TLD and (later) Cypress concealed their errors and mistakes, while personally benefitting by continuing to overcharge (and pay themselves first) for performance of the delegated duties. Mr. Mann's, TLD's and (later) Cypress's nondisclosure caused significant injury to RPS. Realizing that disclosure of their incompetence would lead to their termination, the Mann Defendants concealed their actions in order to continue to have access to the funds they misappropriated. Taking all the Complaint's allegations as true and in a light most favorable to the plaintiff, the Mann Defendants' Motion to Dismiss should be denied.

## H.    RPS SUFFICIENTLY PLED TORTIOUS INTERFERENCE.

RPS pled that the Mann Defendants intentionally interfered with the JOA contract and vendor contracts. (Dkt. 21, ¶¶ 15, 21, 22, 24, 26, 36, 38, 39-40). RPS, as operator, owed duties to the JOA participants. Those duties are outlined in the JOA. Despite being fully aware of those duties, and agreeing to act as RPS's agent in regard to those duties, the Mann Defendants acted completely in their own best interests. The same can be said for the vendor agreements – some of which were actually executed by Michael Mann in his individual capacity. The Mann Defendants routinely acted in their own best interests – and directly against the interest of RPS. The Mann Defendants regularly violated the terms of the JOA, which resulted in significant turmoil between Richard Small and his long-term friends, turned business partners, in the JOA. The Mann Defendants' actions caused significant reputational damage to RPS with the JOA participants, and also with many vendors who made claims against RPS for payment for services.

As a result of the actions of the Mann Defendants, many of the contracts at issue were terminated. The Complaint provides sufficient facts regarding what contracts were interfered with and by whom and how the interference occurred. The Complaint also describes how the Mann Defendants acted outside the scope of their agency when engaging in self-dealing, and how RPS was damaged as a result. Defendants' Motion to Dismiss should be denied.

## I.     RPS SUFFICIENTLY PLED ITS CONVERSION CLAIMS.

RPS's conversion claims against all Defendants are appropriate. Mr. Mann via TLD (and later Cypress) invoiced the joint account participants (including RPS) for Five Stars' invoices. Five Star did not complete its work, and what it did was poorly done. If the money was not paid to Five Star, it was used by TLD (and later Cypress) for its own profit. That is conversion. If the money was paid to Five Star for work performed that was not completed properly, that is conversion. TLD (and later Cypress) maintained the financial records. Discovery will reveal the amount of conversion by each defendant.

## J.     RPS SUFFICIENTLY PLED CONSPIRACY.

As described above, RPS pled sufficient facts to establish that the Mann Defendants conspired with Five Star to defraud Plaintiff, and that Mr. Mann – acting on his own behalf – conspired with employees of TLD (and later Cypress) to divert and comingle funds. (Dkt. 21, ¶¶ 149-153).

## K.     RPS'S CLAIMS ARE UNAFFECTED BY THE ECONOMIC LOSS DOCTRINE.

Under the economic loss doctrine, a plaintiff may be precluded from seeking recovery in tort when the *only* injury is economic loss subject to a contract. *Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 13 (Tex. 1996)(emphasis added). The Mann Defendants contend the economic loss doctrine bars certain of Plaintiff's tort claims, specifically breach of fiduciary duty, fraud,

negligence, DTPA and conversion.[7]  They are incorrect.  Indeed, the Mann Defendants' argument is contradicted by the very cases they cite.

The Texas Supreme Court clarifies the economic loss doctrine as follows:

> To say that the economic loss rule "preclude[s] tort claims"…overlooks all of the **tort claims for which courts have allowed recovery of economic damages**…**Among these are negligent misrepresentation, legal or accounting malpractice, breach of fiduciary duty**, **fraud, fraudulent inducement**, **tortious interference with contract**, nuisance, wrongful death claims related to loss of support from the decedent, business disparagement, **and some statutory causes of action**.

*Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418-19 (Tex. 2011) (emphasis added).  "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) <u>whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law</u>; and 2) <u>whether the injury is *only* the economic loss to the subject contract itself</u>."  *Auriti v. Wells Fargo Bank, N.A.* 2013 WL 2417832, *5 (S.D. Tex. – Galveston) citing *Hurd v. BAC Home Loans Servicing, L.P.,* 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012)(emphasis added).

In *Sharyland,* the Texas Supreme Court held that overly broad statements such as "purely economic losses cannot be recovered in tort" are not accurate – pointing out that the many tort causes of action for which purely economic losses *are* recoverable even absent physical injury or property damage.  *Sharyland*, 354 S.W.3d at 415.  *Sharyland* emphasized that the core inquiry is whether the claimed damages arose from "breach of a duty created under contract, as opposed to a duty imposed by law."  *Id.* at 417.

---

[7] **Note**: Defendant does <u>not</u> raise this doctrine as to Plaintiff's fraudulent inducement, fraud by nondisclosure, or tortious interference claims.

According to the Texas Supreme Court, the economic loss rule "is not generally applicable in every situation," and "allows recovery of economic damages in tort, or not, according to its underlying principles." *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 235–36 (Tex.2014). These principles, according to the Texas Supreme Court, include avoiding the indeterminate and disproportionate liability that economic damages tend to impose on tortfeasors, and giving deference to the parties' contractual agreements, under which the "[r]isks of economic loss" have been bargained for and allocated between the parties themselves. *Id.* at 240–41.

In addition, <u>Texas law treats damage to reputation and goodwill as non-economic damages</u>. *FinishMaster, Inc. v. Richard's Paint and Body Shop, LLC,* 2012 WL 2376218 (W.D. Tex. 2012). RPS suffered injury separate and apart from the contractual damages suffered. The Mann Defendants' actions caused more damage to RPS than contractual economic damage. They also damaged RPS's reputation and goodwill. The economic loss doctrine does not bar these claims.

1. **The Economic Loss Doctrine Does Not Apply to RPS's Breach of Fiduciary Duty Claims.**

Even though the written TLD/Cypress service agreements were a contract for services, fiduciary duties arise from the long-standing relationship of trust between RPS and Mr. Mann and his companies, the agency agreement, and the retention and movement of project funds. <u>Because the duty owed to RPS by Mann Defendants arises from more than the written contracts, the economic loss doctrine does not bar RPS's breach of fiduciary duty claims</u>.

2. **The Economic Loss Doctrine Does Not Apply to RPS's Fraud Claims.**

"<u>As a matter of law, the economic loss rule does not apply to fraud claims because the parties to a contract have an independent duty not to commit the intentional tort of fraud</u>." *Barcenas v. Fed. Home Loan Mortg. Co.,* No. H-12-2466, 2013 WL 1425138 at *3 (S.D. Tex. – Houston.) *See Formosa Plastics Corp. United States v. Presidio Eng'Rs & Contrs.*, 960 S.W.2d

41, 47 (Tex. 1998); *Southwestern Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 496 (Tex. 1991);

*also see Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 ("The acts of a party may breach

duties in tort or in contract alone or simultaneously in both.")  As the Texas Supreme Court held:

> Accordingly, tort damages are recoverable for a fraudulent inducement claim
> irrespective of whether the fraudulent representations are later subsumed in a
> contract or whether the plaintiff only suffers an economic loss related to the subject
> matter of the contract.  Allowing the recovery of fraud damages sounding in tort
> only when a plaintiff suffers an injury that is distinct from the economic losses
> recoverable under a breach of contract claim is inconsistent with this well-
> established law, and also ignores the fact that an independent legal duty, separate
> from the existence of the contract itself, precludes the use of fraud to induce a
> binding agreement.

*Formosa Plastics Corp. United States v. Presidio Eng'Rs & Contrs.*, 960 S.W.2d 41, 47 (Tex.

1998)(emphasis added).

### 3.    The Economic Loss Rule is Inapplicable to Plaintiff's Negligence Claims.

RPS's negligence claims are not barred by the economic loss doctrine.  As noted in

*Formosa Plastics Corp. United States v. Presidio Eng'Rs & Contrs.*, 960 S.W.2d 41, 47 (Tex.

1998), *Southwestern Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 496 (Tex. 1991); *also see Jim

Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986), even when there is a contract, when

claimed torts are based on *how* the promised action was performed, recovery in tort is appropriate.

Mr. Mann and TLD/Cypress promised to perform delegated operator services on behalf of RPS

and failed.  Mr. Mann failed to exercise reasonable care and due diligence in regard to Five Star.

Mr. Mann recommended to RPS that he be granted authority to enter into the Five Star contract as

an agent of RPS and did so.  This was negligence.  RPS's negligence claims are unaffected by the

economic loss doctrine.

**4.     RPS's DTPA claims are not barred by the economic loss doctrine or a "mere breach of contract" argument.**

RPS's DTPA claims stem from the fraud committed by Mr. Mann and TLD (and later Cypress) toward RPS.  As described above, the facts in this case involve much more than "mere breach of a contract."

In *Salek v. Suntrust Mortg. Inc.*, 2018 U.S. Dist. LEXIS 133396 (S.D. Tex. Aug. 8, 2018), the court analyzed DTPA claims as they relate to the "mere breach of contract" defense.  The plaintiff in *Salek* made DTPA claims that Suntrust required certain "burdensome tasks" and "delay[ed] the release of funds in breach of its own promises." *Id*. at *17-18.  The court held that these actions were indeed governed by the contract at issue.  *Id*. at *18.  Importantly, in footnote 23, the court cited *SCS Builders, Inc. v. Searcy*, 390 S.W.3d 534 (Tex. App. – Eastland 2012), pointing out that the plaintiff in *Salek* , "unlike the plaintiff in *Searcy*…asserted actionable conduct *outside* the relevant contract by alleging that the defendant made *misrepresentations* that *induced* plaintiff to enter the agreement*.*"  (Emphasis added).  RPS's claims under the DTPA fall *outside* the TLD (and later Cypress) agreements.  Complaint, ¶ ¶ 84-96.

Similar findings may be found in the other cases cited by the Mann Defendants – *Crawford*, 917 S.W.2d and *BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440 (N.D. Tex. 2015).  The Mann Defendants' belief that RPS is limited solely to contractual recovery for all the Mann Defendant's acts and omissions is incorrect.  RPS delegated its operator duties to its agents Mr. Mann and TLD (and later Cypress) and bestowed and entered into an agency relationship with each of them.  Complaint ¶¶ 13, 14, 15, 19-22, 26, 33-35, 84-94.  No contract prevents RPS's claims under the DTPA.  The Mann Defendants Motion to Dismiss should be denied.

27

**VI.**
**<u>CONCLUSION</u>**

Discovery has not yet begun.  When taken as true, pursuant to the Rules, Plaintiff's Complaint provides more than sufficient particularity and notice, and provides ample evidence to support its claims.  Defendants' Motion to Dismiss should be denied.

For the reasons set forth above, RPS respectfully requests that the Mann Defendants' Motion to Dismiss (Dkt. 34) be denied, and all other just relief.

Dated: August 26, 2020                              Respectfully submitted,

                                        */s/ John Wesley Raley*
                                        John Wesley Raley
                                        Texas Bar No. 16488400
                                        Robert M. Bowick
                                        Texas Bar No. 24029932
                                        Tanya Dugas Dawson
                                        Texas Bar No. 24072076
                                        **RALEY & BOWICK, LLP**
                                        1800 Augusta Drive, Suite 300
                                        Houston, Texas 77057
                                        713-429-8050 (telephone)
                                        713-429-8045 (facsimile)
                                        Email: jraley@raleybowick.com
                                                rbowick@raleybowick.com
                                                tdawson@raleybowick.com

                                        **ATTORNEYS FOR PLAINTIFF**
                                        **R. P. SMALL CORP.**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that copies of this Response to Motion to Dismiss was served on all counsel of record through the Court's ECF/PACER filing system on August 26, 2020.

                                        */s/ John Wesley Raley*
                                        **John Wesley Raley**