## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

R.P. SMALL CORP., §
§
    *Plaintiff*, §
§
v. § CIVIL ACTION H-20-1490
§
THE LAND DEPARTMENT, INC. *et al.*, §
§
    *Defendants*. §

### MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to dismiss filed by defendants The Land Department,

Inc. ("TLD"), Cypress Rock Land Services, LLC ("Cypress"), and Michael H. Mann (collectively,

the "Land Defendants").   Dkt. 34.   Having considered the motion, response (Dkt. 40), reply

(Dkt. 43), second amended complaint (Dkt. 21), and the applicable law, the court is of the opinion

that the motion should be **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

This case is about a long-term business relationship between the plaintiff R.P. Small Corp.

("RPS") and Mann that went south.   Dkt. 21.   Mann and the president of RPS, Richard Small, had

worked together on business dealings relating to oil and gas leases for over twenty years and,

according to RPS, became good friends.[1]   *Id.*   RPS was an operator, and Mann had previously

performed landman services for RPS.   *Id.*   Small was older than Mann, and, as Small aged, he

began to rely more on Mann to handle business transactions.   *Id.*   Mann was the owner of TLD,

but he ceased doing business as TLD in October 2019 and formed Cypress.   *Id.*   RPS entered into

---

[1] At this stage, the court takes all the allegations in the second amended complaint as true.

written contracts with both TLD and Cypress, at different times, for "petroleum land services to the oil and gas industry" that included but were not limited to landman services. *Id.* RPS contends that it also entered into oral agency agreements with Mann, TLD, and Cypress. *Id.*

Under these oral agreements, Mann, TLD, and Cypress allegedly served as RPS's agent regarding certain projects. *Id.* RPS alleges that Mann on behalf of himself and his companies represented that they had expertise to serve as an operator's agent. *Id.* However, while serving as RPS's agents, RPS contends that each of the Land Defendants failed to comply with Counsel of Petroleum Accountants Societies ("COPAS") procedures and otherwise mismanaged the financial aspects of the work they were doing as RPS's agents. *Id.* RPS alleges that the improper procedures resulted in RPS paying several invoices two or three times. *Id.* RPS additionally contends that Cypress invoiced significant amounts of money that were not even used in drilling, reworking, or plugging. *Id.* Moreover, TLD and Cypress allegedly failed to pay vendor invoices, and RPS ended up paying these invoices directly to rectify the accounts. *Id.* RPS contends that TLD and Cypress failed to comply with the monetary distribution requirements in the written Joint Operating Agreement ("JOA") RPS had with other investors, and the noncompliance was deliberately concealed from RPS. *Id.*

RPS filed suit against the Land Defendants and Five Star Petroleum, LLC ("Five Star") on April 27, 2020. Dkt. 1. RPS has since amended its complaint twice, seemingly in response to motions to dismiss. Dkts. 13, 21. RPS asserts claims against all the Land Defendants for breach of fiduciary duty, breach of agency contracts, fraud and fraudulent inducement, fraud by nondisclosure, negligence, violations of the Texas Deceptive Trade Practices Act ("DTPA"), tortious interference with contract, conversion, and conspiracy. Dkt. 21. RPS asserted similar

claims against Five Star, but RPS voluntarily dismissed all of its claims against Five Star on August 21, 2020.  Dkts. 21, 37.

The Land Defendants move to dismiss all of RPS's claims, arguing that (1) RPS does not assert its fraud, fraudulent inducement, fraud by nondisclosure, DTPA, and breach of fiduciary duty claims with particularity as required by Federal Rule of Civil Procedure 9(b); and (2) RPS does not meet the Rule 8 pleading requirements for these or its other claims against the Land Defendants.  Dkt. 34.  The Land Defendants argue that RPS does not state which defendants were involved in particular claims or allegations and fails to provide even basic details to support its claims.  *Id.*  They also assert that the following claims fail under Texas law: (1) the breach of fiduciary duty claim because RPS does not state that any defendant owed such a duty; (2) the fraud, negligent misrepresentation, negligence, breach of fiduciary duty, conversion, and DTPA claims because they are really breach of contract claims and are barred by the economic loss doctrine; (3) the negligence claim because the Land Defendants did not owe a duty to RPS; (4) the DTPA claim because RPS is not a "consumer" under the statute; (5) the tortious interference claim because there are no facts alleging the Land Defendants induced a third party to breach its obligations to RPS; and (6) the fraud-by-nondisclosure claim because RPS does not allege any facts supporting a duty to disclose.  *Id.*

In response, RPS points out that TLD was or is wholly owned and operated by Mann, who the second amended complaint states was Small's friend for over twenty years.  Dkt. 40.  Mann is also the sole member of Cypress, which the second amended complaint states acted as a continuation of TLD using the same employees and office space as TLD.  *Id.*  RPS notes that it pleads that TLD's—and later Cypress's—poor accounting procedures resulted in RPS being sued by vendors who had never been paid, even though TLD—and later Cypress—always paid itself.

3

*Id.*  RPS argues that Mann, TLD, and Cypress profited from their associations with RPS and lined their own pockets at RPS's expense.  *Id.*  RPS contends that Mann engaged in a fraudulent scheme to induce RPS to entrust its operations to Mann, TLD, and, later, Cypress.  *Id.*  RPS points to specific allegations in its second amended complaint that it contends sufficiently support all of its claims against Mann, TLD, and Cypress.  *Id.*

In reply, the Land Defendants assert that RPS merely repeats the insufficient allegations in its second amended complaint and fails to provide basic facts that would make out its claims against them.  Dkt. 43.  They argue that the allegations of agency agreements, conspiracies, and fraud are merely legal conclusions and do not meet federal pleading standards.  *Id.*  They further contend that the allegations that there are three separate oral agency agreements are not plausible and that the fiduciary duty claims should be dismissed because there are not facts sufficient to plausibly show such a relationship exists.  *Id.*  Additionally, the Land Defendants assert that the discussions in RPS's response of *where and when* the alleged fraud took place are not in the second amended complaint, and RPS's negligence claims rely on an agency agreement that RPS does not support with factual allegations.  *Id.*  Moreover, the Land Defendants reassert that the economic loss doctrine bars many of RPS's claims because all the alleged injuries relate to the alleged contractual agreement and sound in contract, not tort, and RPS does not plead a duty independent of the contract.  *Id.*  The Land Defendants assert that this is "a textbook economic loss situation." *Id.*  And, they argue that RPS does not allege any misrepresentations that the DTPA covers.  *Id.* The Land Defendants urge the court to dismiss all claims, arguing that RPS has had three chances and the "classic baseball rule" of "three strikes and you're out" should apply.  *Id.*

Rather than relying on the rules of baseball, the court will start with the legal standard for motions to dismiss. It will then analyze each of the claims asserted against the Land Defendants pursuant to this legal standard to determine if RPS's claims survive the motion to dismiss.

## II. Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible— enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

In addition to meeting the plausibility standard, under Federal Rule of Civil Procedure 9(b), if a party is alleging fraud or mistake, the pleading must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (noting that Rule 9(b) does not "supplant" Rule 8(a)). However, this particularity requirement "does not 'reflect a subscription to fact pleading.'" *Id.* (quoting

*Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).  Instead, pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which . . . must make relief plausible, not merely conceivable, when taken as true."  *Id.* (internal quotations omitted) (referring to the standard enunciated in *Twombly*).

The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Id.* (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).  Thus, Rule 9(b) generally requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue."  *Id.* (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).  However, "Rule 9(b)'s ultimate meaning is context-specific."  *Grubbs*, 565 F.3d at 185.  Thus, "[d]epending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand."  *Id.*

## III. ANALYSIS

The Land Defendants assert that several of RPS's claims should be dismissed for failure to plead the claims with particularity, that most of the claims do not even meet the requirements of Rule 8, and that many of the claims are barred by the economic loss rule.  The court will first consider whether RPS has met the Rule 8 standard, in general, and then turn to whether the tort claims are barred by the economic loss rule.  Next, the court will consider what claims must meet the Rule 9(b) heightened pleading requirements and whether RPS has met that standard for the claims to which it applies.  The court will conclude by considering whether RPS should be

permitted to amend its complaint in a fourth attempt to adequately plead the claims in the second amended complaint that do not meet the required standards.

## A.  Rule 8

The Land Defendants argue that RPS has not provided enough information to give them notice of its claims against each defendant and improperly lumps the defendants together.  Dkt. 34. They point out that each defendant has a right to know what claims pertain to which defendant.[2] *Id.*  They then assert several arguments relating to RPS not otherwise meeting the pleading standard for various claims.  *Id.*  The court will consider whether each claim listed in the second amended complaint meets the Rule 8 pleading standard *in seriatim*.

### 1.  Breach of Fiduciary Duty (Under Rule 8)

RPS alleges in the second amended complaint that Mann and Small had a "decades long business and personal relationship," and Mann exploited that relationship to secure the agency agreements.  Dkt. 21.  RPS contends that the Land Defendants were agents under the agreements and, as agents, they owed multiple fiduciaries duty to RPS.  *Id.*  RPS asserts that the Land Defendants breached these duties in several different ways because they did not actually have expertise in being an operator's agent. *Id.*  RPS asserts that it was harmed as a result.  *Id.*

---

[2] Since Mann is the president of both corporate defendants, failing to list out each defendants' name for each action is not necessarily fatal.  For instance, the Land Defendants argue that the second amended complaint indicates that "'Mr. Mann, TLD, and Cypress were agents'" and then lumps the three together in allegations that they breached certain fiduciary duties.  *Id.* (citing the second amended complaint).  However, since TLD and Cypress were Mann's companies, it makes sense that all three defendants did the same things, with Mann making assertions on behalf of himself and each of his companies at different times.  There are, however, some instances where the failure to delineate which defendant did what is problematic.  The court will address these issues when discussing each individual claim.

The Land Defendants move to dismiss RPS's breach of fiduciary duty claim against Mann, as an individual, arguing that there are no allegations about the agreement or intent to make Mann a fiduciary of RPS.  Dkt. 34.  They assert that stating that Mann was acting individually as well as on behalf of his companies is insufficient to allege a fiduciary relationship with Mann in his individual capacity.  *Id.*  The Land Defendants further argue that the allegations of a long business and personal relationship does not establish a fiduciary duty, as the mere fact that Small trusted Mann cannot transform their business relationship or even their friendship into a fiduciary relationship.  *Id.* (citing *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005)).

The Land Defendants also move to dismiss the breach of fiduciary duty claims against Mann's companies.  Dkt. 34.  While the claims allegedly are based on written contracts with the two companies and multiple oral agency agreements, the Land Defendants argue that some type of fiduciary relationship outside of these transactions is required.  *Id.*  They contend that RPS's allegations of a fiduciary relationship hinge on the transactions between the parties, which is insufficient for an informal fiduciary relationship, and the alleged written agreements do not create formal fiduciary relationships because the term "agent" is not even used in the agreements.  *Id.*  Additionally, they assert that the allegations of oral agreements do not give rise to a fiduciary relationship because there are not details about the terms of these alleged oral agreements, and the allegations that there were oral agreements are thus merely legal conclusions.  *Id.*  Moreover, the written agreements between RPS and TLD and between RPS and Cypress both contain a merger clause that supersedes the alleged oral agreements.  *Id.* (citing Dkts. 21-1 at 4, 21-4 at 4 ("This instrument constitutes the entire agreement between Client and [the company]; no prior written or prior contemporaneous oral promises or representations shall be binding.")  The Land Defendants

contend that RPS's allegations of separate oral agency agreements is a modification precluded by the terms of the agreements. *Id.*

RPS argues, with regard to the claims against Mann as an individual, that both the long-time business relationship of trust and the oral agency agreement give rise to a fiduciary duty owed by Mann and his companies to Small and RPS, not only to perform work competently and with reasonable skill, but also to maintain and account for the funds coming to TLD—and later Cypress—from RPS to participants in the JOA. Dkt. 41 (relying primarily on *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 593–94 (Tex. 1992), *superseded in part by statute*, and *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.], 1997, pet. denied)).

With regard to the companies, RPS argues that RPS had formal agency relationships with TLD and Cypress. Dkt. 40. It asserts that the agency agreements were specific to the project in question, and that each of the Land Defendants agreed to act as an operator's agent to perform tasks as an operator on the project. *Id.* It points out that the second amended complaint is "replete with facts demonstrating TLD['s] and Cypress's agency undertaking—issuing cash calls, executing vendor contracts, etc." *Id.* It asserts that the Land Defendants breached these formal fiduciary duties when they overcharged RPS, overbilled, prioritized their own invoices, improperly managed funds, and concealed their mismanagement of the funds from RPS. *Id.*

### a.   Legal Standard

In Texas, the elements of breach of fiduciary duty are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his or her fiduciary duty to the plaintiff; and (3) the defendant's breach must result in either injury to the plaintiff or benefit to the defendant. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting

*Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)).   "[N]ot every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship," and courts "do not create such a relationship lightly."  *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997).

### b.  Claims Against TLD and Cypress

First, the court notes that the Land Defendants' arguments with regard to the companies relate solely to whether RPS has adequately pled a fiduciary duty.   The court finds that it is plausible that the "other related services" clause of the written contracts was meant to be broad enough to encompass the alleged agency agreements, particularly in light of the duties that the second amended complaint alleges TLD and Cypress undertook.   Whether the parties actually intended for this language to create an agency relationship and thus a fiduciary relationship is not clear from the plain language of the agreements, as "other related services" is not a defined term. However, at this stage the court must take the allegations in the second amended complaint as true.[3]   The Texas Supreme Court recognizes a principal/agent relationship as "giv[ing] rise to a 'fiduciary' duty as a matter of law."  *Crim. Truck & Tractor Co.*, 823 S.W.2d at 594 (citing *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 513 (Tex. 1942)).   Accordingly, the motion to dismiss the breach of fiduciary duty claims against TLD and Cypress under Rule 12(b)(6) is **DENIED**.[4]

---

[3]  The requirement that the court not create a fiduciary duty lightly will be an important consideration as this case proceeds.   The holding today is merely preliminary based upon a plausible assertion that the contractual terms encompass an agency relationship.

[4] The court declines to address whether the alleged oral agreements create a fiduciary duty because (1) RPS states a claim for a duty under the written agreements; and (2) RPS does not state a plausible claim that there were enforceable oral agreements (*see* Part III.A.2.b).

### c.   Claims Against Mann as an Individual

RPS contends that Mann's fiduciary duty is based not only on the alleged oral agency agreement but also on his long-standing relationship with Small.  The court will first review the cases upon which the parties rely relating to fiduciary relationships and then discuss whether the allegations in the second amended complaint plausibly allege that Mann breached a fiduciary duty to RPS under this caselaw.

In *Meyer*, the Texas Supreme Court noted that some relationships give rise to formal fiduciary duties, like an attorney-client relationship, and others give rise to an informal fiduciary duty, which "arises from 'a moral, social, domestic or purely personal relationship of trust and confidence.'"  167 S.W.3d at 330–31.  It pointed out, however, that it would not "'create such a relationship lightly.'"  *Id.* at 331 (quoting *Schlumberger Tech. Corp.*, 959 S.W.2d at 177).  The "special relationship" upon which a fiduciary duty is based must be a "'special relationship of trust and confidence [that] exist[ed] prior to, and apart from, the agreement made the basis of the suit.'"  *Id.* (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998)).  The court noted that prior "arms-length transactions [that were] entered into for the parties' mutual benefit . . . do not establish a basis for a fiduciary relationship."  *Id.*  Additionally, the fact that one party trusts the other or that they were friends for several years cannot "transform their business arrangement into a fiduciary relationship."  *Id.*

In *Crim Truck & Tractor*, the Texas Supreme Court similarly discussed that "certain informal relationships may give rise to a fiduciary duty."  823 S.W.2d at 594.  It noted that "[b]ecause not every relationship involving a high degree of trust and confidence rises to the stature of a formal fiduciary relationship, the law recognizes the existence of confidential relationships 'in which influence has been acquired and abused, in which confidence has been reposed and

11

betrayed.'"  *Id.* (quoting *Tex. Bank & Tr. Co. v. Moore*, 59 S.W.2d 502, 507 (Tex. 1980)).  It pointed out that the "fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship."  *Id.*  This is because "[e]very contract includes an element of confidence and trust."  *Id.* at 595.  Moreover, a confidential relationship requires more than a cordial relationship of long duration.  *Id.*  Usually, whether a fiduciary relationship exists is a question of fact.  *Id.* at 594.

The *Hoggett* court also discussed informal fiduciary relationships.  It noted that a "fiduciary relationship is an extraordinary one and will not be lightly created," and "the mere fact that one subjectively trusts another does not alone indicate that confidence is placed in another in the sense demanded by fiduciary relationships because something apart from the transaction between the parties is required."  971 S.W.2d at 488.

In the second amended complaint, RPS alleges that Mann and Small had a "decades long business and personal relationship which Mr. Mann exploited to secure the agency agreements with RPS."  Dkt. 21 at 10.  RPS alleges that Small met Mann over twenty years ago, and they worked together on various business dealings and became good friends.  *Id.* at 3.  It asserts that Small relied more and more on Mann as Small grew older, and Small "trusted Mr. Mann implicitly."  *Id.*  RPS contends Mann conceived the idea of developing the wildcat well in Walker County and that he "took advantage of his long-time personal and professional relationship with Richard Small" and "took advantage of this agency agreement to engage in self-dealing and overbilling."  *Id.* at 4.  RPS also contends that each of the Land Defendants, including Mann, owed a fiduciary duty to RPS due to the alleged agency agreements.  *Id.* at 10.

The court finds that these allegations are sufficient, at this stage, to plausibly demonstrate a confidential relationship that existed—apart from this particular agreement—that is more than

12

simply a friendship or professional relationship. Thus, even if the allegations of an oral agency agreement with Mann are insufficient, the court finds RPS has plausibly pled a fiduciary relationship. The allegations in the second amended complaint also plausibly demonstrate breach and an injury to RPS or benefit to Mann, at least at this stage and under the arguments presented in the briefing on the instant motion.[5] *See Navigant Consulting, Inc.*, 508 F.3d at 283. Therefore, the motion to dismiss the breach of fiduciary duty claim against Mann in his individual capacity is **DENIED.**

### 2.     Breach of Contracts

In the second amended complaint, RPS alleges that it entered into written contracts with TLD and Cypress, and it entered into oral agency agreements with each of the Land Defendants. Dkt. 21. RPS contends that the written agreements with TLD and Cypress include a clause about performing "other related services," which RPS alleges includes agency services. *Id.* RPS argues that the Land Defendants breached both the oral agency agreements and the written agreements by invoicing RPS two and three times for the same work. *Id.* RPS asserts that it fully performed its duties and obligations under these agreements, but the Land Defendants failed to comply with their duties and obligations, thus breaching all five contracts. *Id.* RPS alleges it was injured as a result. *Id.*

The Land Defendants move for dismissal of all of the breach of oral contracts claims under Rule 12(b)(6), arguing that RPS fails to state facts sufficient to support a plausible inference that an oral contract existed between RPS and any of the Land Defendants. Dkt. 34. The Land

---

[5] The Land Defendants did not argue that the benefit in a breach of fiduciary duty claim must be a "direct personal benefit" like the fraud claim, *see* Part III.A.3, and instead rested their arguments on the duty prong.

Defendants assert that there are not enough facts alleged regarding the terms and existence of these alleged oral agreements for the court to determine there is a valid oral contract. For instance, RPS does not allege offer, acceptance, consideration, material terms, consent, duration, or even the beginning date of theses alleged oral agreements. *Id.* Additionally, RPS does not state what terms of the alleged oral agreements were breached. *Id.*

Notwithstanding the fact that the second amended complaint does not appear to allege a breach of the written contract claim against Mann as an individual, *see* Dkt. 21 ("RPS entered into an oral agency contract with Mr. Mann individually and written and oral contracts with TLD and Cypress."), the Land Defendants also move for dismissal of the breach of written contract claim against Mann, arguing that the second amended complaint does not plead facts sufficient to state a claim for breach of the written agreements against Mann, individually. Dkt. 34. The Land Defendants note that the written agreements are with TLD and Cypress, and Mann only signed them on behalf of the companies. *Id.* (citing *Shakeri v. ADT Sec. Servs., Inc.*, No. 3:13-CV-2852-D, 2014 WL 5780955, at *9 (N.D. Tex. Nov. 6, 2014) ("[T]e signature of a corporate officer on a contract does not render it his personal contract, where in the body of the contract, it is purported to be a corporation contract.")).

RPS argues in its response that it has pled sufficient details to establish oral agency contracts with each of the Land Defendants. Dkt. 40. RPS notes that it alleged in the second amended complaint that Mann and his companies agreed to act as RPS's agent in operating the wildcat well, and that Mann and his employees were well aware of the duties they were required to perform, as evidenced by TLD's admission that it was hired to perform numerous detailed and

complicated functions.[6]  *Id.*  RPS contends that Mann began executing contracts as RPS's agent and his companies issued cash calls and joint interest billings ("JIB") to participants.  *Id.*  RPS argues that the agency agreements ended when RPS discovered the fraud, fired the Land Defendants, and filed this lawsuit.  *Id.*  RPS asserts that Mann is personally liable for breach of an oral agreement with RPS and discovery may reveal additional personal liability on vendor contracts signed in Mann's individual capacity or without RPS's approval.  *Id.*  RPS further notes that Mann's signature on the Five Star drilling agreement is "bedrock evidence of the existence of a principal/agent relationship" between Mann, individually, and RPS.[7]  *Id.*  RPS contends that discovery may reveal additional personal liability on vendor contracts signed in Mann's individual capacity.

In reply, the Land Defendants assert that the second amended complaint does not contain any detail that would tend to make the existence of these oral agency contracts plausible.  Dkt. 43. The Land Defendants argue that the omission of facts about offer, acceptance, consideration, or the material terms of the contract are fatal omissions.  *Id.*  The Land Defendants contend that Mann's signature on the Five Star contract as RPS's "Land Manager" cannot plausibly constitute proof of three separate agency agreements and two written agency agreements.  *Id.*  The Land Defendants further point out that this argument about the signature on the Five Star contract is not in the second amended complaint, it is just an argument in the response to the motion to dismiss. *Id.*

---

[6] RPS cites an exhibit for this alleged admission that does not appear to be part of the record.  *See* Dkt. 21 ¶ 21 & n.10 (referring to an email attached as Exhibit 4 when Exhibit 4 is actually a written agreement).

[7] Mann indeed signed the Five Star contract on RPS's behalf; the title used was "Land Manager." Dkt. 21, Ex. 2 at 16.

### a.    Legal Standard

Under Texas law, the elements of a breach of contract claim are (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach.  *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).  The elements of a valid contract include: "(1) an offer; (2) acceptance; (3) meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding."  *Cessna Aircraft Co. v. Aircraft Network*, *L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied).  "The elements of written and oral contracts are the same and must be present for a contract to be binding."  *Thorton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.).

### b.    Breach of Oral Agency Contracts

The court agrees that the second amended complaint conclusorily states there are valid oral agency agreements with all three of the Land Defendants.  It does not contain sufficient allegations of an offer, acceptance, consideration, or terms of these alleged oral agency agreements. Moreover, the written contracts with TLD and Cypress contain merger clauses.  Dkts. 21-1 at 4, 21-4 at 4.  Accordingly, the motion to dismiss the breach of oral agency agreement claims is **GRANTED**.

### c.    Breach of Written Agreements: TLD and Cypress

The Land Defendants move to dismiss the entire second amended complaint, but they provide no argument regarding the alleged breach of written agreements by TLD and Cypress.  *See* Dkt. 34.  To the extent the Land Defendants seek dismissal of the breach of a written contract claims against TLD and Cypress, the motion is **DENIED**.  RPS points out in its second amended

complaint that these agreements state that the contracted for services "include[d], but [were] not limited to" traditional landman-type activities, and that TLD and later Cypress would perform "other related services." Dkt. 21.  RPS contends that these agreements were "meant to encompass services beyond landman services if the company had any experience and expertise in providing those services." *Id.* The court cannot determine what the parties intended when entering into this broad contractual language prior to discovery and presentation of evidence.

### d.  Breach of Written Agreements: Mann

However, to the extent the Land Defendants seek dismissal of a breach of the written agreement against Mann as an individual and RPS even means to assert such a claim, there is no indication that Mann signed the written contracts in his individual capacity.  "Where a corporation enters into a contract, the officers' signature on the contract, with or without a designation as to his representative capacity, does not render him personally liable under the contract." *Redmon v. Griffith*, 202 S.W.3d 225, 239 (Tex. App.—Tyler 2006, pet. denied), disapproved of on other grounds *Ritchie v. Rupe*, 443 S.W.3d 856 (Tex. 2014); *see Shakeri*, 2014 WL 5780955, at *9 (N.D. Tex. 2014).  Thus, the motion to dismiss the breach of a written contract claim against Mann, to the extent such a claim is asserted, is **GRANTED.**

### 3.  Fraud Based Claims

RPS makes several fraud-based claims in the second amended complaint: fraud based on allegedly making misstatements about funds, submitting duplicate "cash calls and JIBs," overbilling, and submitting improper invoices; fraudulent inducement based on representations made to RPS to get Small to enter into the agency contracts; and fraud by nondisclosure based on allegedly concealing facts about Mann's and his employees' inexperience and inability to properly do the work of an operator's agent. Dkt. 21.  While fraud-based claims are traditionally considered

17

under Rule 9(b), *see* Fed. R. Civ. P. 9(b), the Land Defendants make some discrete arguments that some of the fraud-based claims should be dismissed for failure to meet the Rule 8 pleading standard.   Dkt. 34.   The court addresses whether most of the fraud-based claims are pled with particularity pursuant to the requirements of Rule 9(b) in Part III.C, *infra*, but it will consider an argument that RPS does not meet the Rule 8 standard to show that Mann can be held liable as an individual here.[8]

The Land Defendants argue that the fraud claims against Mann as an individual must be dismissed because pursuant to section 21.223 of the Texas Business and Organizations Code, an individual cannot be sued for the actions of his company unless the individual perpetrated actual fraud on the obligee primarily for his or her direct personal benefit.   *Id.* (citing Tex. Bus. Orgs. Code Ann. § 21.223).   The Land Defendants assert that many of RPS's claims against Mann individually rely entirely on the actions of Mann's companies, including the fraud, fraudulent inducement, fraud by nondisclosure, and conversion claims.   *Id.*

RPS does not address section 21.223 in its response.   *See* Dkt. 40.   RPS states that "Mr. Mann remained in charge and was the sole spokesman.   The Complaint specified individual actions as far as possible in Paragraphs 8-40, but many of the acts of Mr. Mann were both individually and on behalf of TLD and (later) Cypress.   No clear line of distinction exists regarding certain actions."   *Id.* (emphasis in original).   The Land Defendants' argument, however, requires that there be a clear distinction in that there had to be a direct *personal* benefit to Mann.

Under section 21.223 of the Texas Business and Organizations Code,

---

[8] The Land Defendants assert that RPS does not meet the Rule 8 standard for its fraud by nondisclosure claims against the companies because it does not adequately plead a duty to disclose. The court addresses this duty when discussing Rule 9(b).

> (a) A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber or of the corporation, may not be held liable to the corporation or its obligees with respect to:
>
> . . .
>
> 2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory; or
>
> . . .
>
> (b) Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate.

Tex. Bus. & Org. Code Ann. § 21.223.  RPS alleges in the second amended complaint that TLD is a Texas corporation and Cypress is a Texas limited liability company, and Mann is the president and owner of both companies.  Dkt. 21.

In *TecLogistics, Inc. v. Dresser-Rand Group, Inc.*, the Houston Court of Appeals (Fourteenth District) found that if the requirements of section 21.223(a)(2) are satisfied, a defendant cannot be held liable for fraud unless the requirements of section 21.223(b) are also satisfied.  527 S.W.3d 589, 603 (Tex. App.—Houston [14th Dist.] 2017, no pet.).  It noted that the party attempting to hold the president of a company liable did not allege in the written pleadings that the president "acted primarily for her direct personal benefit" and presented no such evidence at trial.  *Id.*  The court held that section 21.223(a)(2) shielded the president from liability and no exception applied.  *Id.*; *see also Hong v. Havey*, 551 S.W.3d 875, 890 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding that a plaintiff suing the owner of a corporation could recover for

common law fraud "only if actual fraud was perpetrated primarily for [the owner's] direct personal benefit" due to the shield provided by section 21.223).

The second amended complaint does not allege a direct personal benefit, as opposed to a benefit to Mann's companies.  Accordingly, the motion to dismiss the fraud claim against Mann in his individual capacity is **GRANTED**.

### 4.  Negligence

RPS alleges that the Land Defendants failed to exercise reasonable care in the operation of drilling the Norma #1, failed to exercise reasonable care and diligence in hiring contractors and subcontractors to perform work on the Norma #1, failed to exercise reasonable care and diligence in issuing cash calls and JIBs and in other financial duties, and failed to act as a reasonably prudent operator in performing their services for RPS, and that RPS was damaged as a result of all these negligent acts.  Dkt. 21.

The Land Defendants move for dismissal of all the negligence claims in the second amended complaint.  Dkt. 34.  They argue that the negligence claim against Mann as an individual should be dismissed because RPS has not stated a duty that Mann breached that is independent of his duties as President of TLD and Cypress, which they contend is required under *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 182 (5th Cir. 2018).  *Id.*  Moreover, the Land Defendants argue that the second amended complaint does not identify any negligent actions that Mann, individually, performed; instead, it asserts that the defendants as a group were negligent.  *Id.*  The Land Defendants assert that the negligence claims against the defendants as a group should be dismissed because (1) RPS does not plead any duties the defendants allegedly owed to RPS; and (2) RPS does not provide adequate factual foundation to plausibly state a claim for negligence.  *Id.*  They

note that if the negligence claims are based on hiring Five Star, the statute of limitations for that claim has run.  *Id.*

RPS asserts that the Land defendants as a group owed a duty to perform their work with care, skill, reasonable expedience, and faithfulness.  Dkt. 40 (citing *Nabors Drilling, Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009)).  RPS asserts that the second amended complaint is "replete with precise factual allegations supporting RPS's negligence claims," which are based on the "failure to act as reasonably prudent agents for an operator regarding the oil wells at issue, including hiring contracts, managing funds, and paying expense."  *Id.* (citing specific paragraphs of the second amended complaint).  Additionally, RPS argues that Mann, individually, owed RPS a duty of care due to their long-standing relationship and because he was a manager of TLD and Cypress.  Dkt. 40 (citing *Leitch*, 935 S.W.2d at 117).  RPS attempts to distinguish the caselaw relied upon by the Land Defendants requiring an independent duty to hold a corporate officer liable (*Allen*), asserting that it pled that it relied on Mann and that Mann's negligence, along with the companies', increased RPS's risk of harm.  *Id.*

In reply, the Land Defendants assert that (1) the alleged independent duty arises from an oral agency agreement that RPS does not support with factual allegations; and (2) the case RPS relies on to show that Mann owed a duty of care due to his relationship with RPS, *Leitch*, is not on point, as the *Leitch* defendant had an independent duty to drive safely, and there is no independent duty here.  Dkt. 43.

     **a.**    **Legal Standard**

A "cause of action for negligence in Texas requires three elements.  There must be a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach."  *D. Hous., Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).  The arguments in this case,

at this stage, revolve around whether a duty was owed.  The court will consider whether there are plausible allegations of a duty under the caselaw relied upon by the parties; it will first consider the cases that relate to duties by officers of a company and then the cases that relate to the duties owed by companies.

### b.  Did Mann Owe a Duty?

With regard to whether Mann owed a duty to RPS, the Land Defendants rely primarily on *Allen*, and RPS relies on *Leitch*.  In *Leitch*, the Texas Supreme Court noted the long-standing rule that "the law charges the corporation itself, not the individual corporate officer, with the duty to provide the employee a safe workplace."  935 S.W.2d at 117 (citing *Fort Worth Elevators Co. v. Russell*, 70 S.W.2d 397, 401 (Tex. 1934)).  The court pointed out that the corporate officer could be liable, however, for his or her own negligence, but only if the officer owed the injured party an independent duty.  *Id.*  By way of example, the court noted that both a company *and* a corporate officer whose negligence causes an auto accident when he was driving in the course of employment may be held liable.  *Id.*  This is because the corporate officer operating a motor vehicle owes the general public a duty of reasonable care.  *Id.*  The actions in the *Leitch* case, which related to not providing safety equipment to an employee who hurt his back, were taken as officers of the company and not in the corporate officers' individual capacities.  *Id.* at 118.  They therefore could not be held liable for the plaintiff's injuries.  *Id.*  This case is thus not helpful to RPS's position.

In *Allen*, the plaintiff sued Wal-Mart and various Wal-Mart employees after her daughter was found dead in a Wal-Mart parking lot from inhaling aerosol dust remover purchased at Wal-Mart.  907 F.3d at 175–76.  The Fifth Circuit, citing *Leitch*, noted that the employees of Wal-Mart could not be held individually liable unless they owed the plaintiff's daughter an independent duty.

*Id.* at 182.  The court found that the employees did not owe a duty to refuse to sell dust remover and did not have a duty to protect the plaintiff's daughter from abusing the dust remover.  *Id.*

Here, there is no clear differentiation between the duties Mann owed as an individual and the duties he owed in his capacity as President of the two companies.  His work as a manager is not an independent duty to RPS.  Because RPS fails to plead an independent duty, the motion to dismiss the negligence claim against Mann, in his individual capacity, is **GRANTED.**

### c.   Did the Companies Owe a Duty?

Under Texas law, there is a common-law duty that accompanies contracts to perform the contract with "care, skill, reasonable expedience and faithfulness."  *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W. 2d 493, 494 (Tex. 1991).  This duty arises only if the conduct causing the injury "would give rise to liability independent of the fact that a contract exists between the parties."  *Id.*  Here, all of the injuries alleged allegedly arose from "failure to act as reasonably prudent agents for an operator regarding the oil wells at issue" (Dkt. 40) and relate to breach of the alleged agency agreements.  *Cf.* Part III.B.3, *infra*.  Thus, RPS fails to state a negligence claim against the companies.  The motion to dismiss the negligence claim against TLD and Cypress is **GRANTED**.

### 5.    DTPA

In the second amended complaint, RPS contends that it is a consumer, TLD and Cypress are Texas entities engaged in the business of offering services for an operator, and the acts, conduct, and omissions of TLD and Cypress were unfair methods of competition and unfair and deceptive acts or practices in violation of the DTPA.  Dkt. 21.

The Land Defendants argue that RPS's DTPA claims against TLD and Cypress fail because RPS is not a consumer.  Dkt. 34.  RPS contends that it is a "consumer" because it sought services

from the Land Defendants, and that neither case cited by the Land Defendants in support of their argument holds that a person seeking operator services is not a consumer.  Dkt. 40.

To maintain a claim under the DTPA, a plaintiff must be a "consumer" as defined in section 17.45(4).  *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351 (Tex. 1987).  A "consumer" is "an individual, partnership, corporation, [the state of Texas], or a subdivision or agency of [Texas] who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more."  Tex. Bus. & Com. Code Ann. § 17.45(4).  A "service" is "work, labor, or service purchased or leased for use."  Tex. Bus. & Com. Code Ann. § 17.45(2).  A "consumer may maintain an action" under the DTPA against any "person" who employs one of the actions listed in section 17.46, it causes the consumer economic damages or damages for mental anguish, and the consumer relied on the action that was employed to its detriment.  *Id.* § 17.50(1).

Section 17.46 lists practices that are unlawful under the DTPA.  The subsections RPS contends the Land Defendants violated indicate that the following "false, misleading, or deceptive acts or practices" are unlawful: (1) "representing that . . . services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not" (§ 17.46(b)(5)); (2) "representing that . . . services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (§ 17.46(b)(7)); (3) "representing that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced" (§ 17.46(b)(22)); and (4) "failing to disclose information concerning . . . services which was known at the time of the transaction if

24

such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed" (§ 17.46(b)(24)).  Tex. Bus. & Com. Code Ann. § 17.46; Dkt. 21.

The Land Defendants cite cases holding that a party securing operator services is not a "consumer."  Dkt. 34 (citing *Anderson v. Vinson Expl., Inc.*, 832 S.W.2d 657, 665 (Tex. App.— El Paso 1992, writ denied); *Johnston v. Am. Cometra, Inc.*, 837 S.W.2d 711, 717 (Tex. App.— Austin 1992, writ denied)).  RPS argues that those cases dealt with investors under a joint operating agreement, and the Land Defendants were not investors.  Dkt. 40.

In the first case cited by the Land Defendants, *Anderson*, the court noted that if the plaintiff had paid for "services" at all, it was for the duties as an operator, and not for the allegedly deceptive advice on oil and gas investments that were what the lawsuit was about.  832 S.W.2d at 664–65. It noted that an "investor under an oil and gas joint operating agreement is not, as a matter of law, a 'consumer' of services as contemplated within the DTPA."  *Id.* at 665.  This is because the "purpose of operating agreements in the oil and gas industry is to spread the risk of drilling operations among the investors," which "should not be construed to create liability under the DTPA."  *Id.*

In the other case, *Cometra*, the plaintiffs had received bills from the defendant, but the bills were "'merely to reimburse [the defendant] for the costs and expenses it incurred on behalf of the plaintiffs'" and the defendant "'neither profited no[r] attempted to profit on any aspect of its operations on the well.'"  837 S.W.2d at 717.  The court found that the plaintiffs were not "consumers" under the DTPA because "the services [were] not 'purchased' but [were] performed gratuitously."  *Id.*

Here, the second amended complaint states that Mann and TLD, and later Cypress, entered into oral agency agreements with RPS; RPS was the operator in the JOA among the investors. *See* Dkt. 21. It also states that Mann, TLD, and Cypress received priority and preferential payment of their own invoices from RPS's operating funds, indicating that they are not typical investors in a joint operating agreement and were receiving payment for their services. *See id.* Thus, the cases relied upon by the Land Defendants are not on point.

The court finds that RPS has pled sufficient facts to state that it is a "consumer" under the DTPA, and this finding is not inconsistent with Texas caselaw relating to operators and joint operating agreements.[9] Because RPS has pled sufficient facts to state that it is a "consumer" under the DTPA, the motion to dismiss the DTPA claims against TLD and Cypress under Rule 12(b)(6) for failing to adequately allege consumer status is **DENIED**.

### 6.     Tortious Interference with Contract

RPS alleges in the second amended complaint that the Land Defendants (Mann, individually and on behalf of his companies) willfully and intentionally interfered with the joint operating agreement between RPS and the nonoperators. Dkt. 21. It also alleges that the Land Defendants willfully and intentionally interfered with various vendor agreements and contracts related to the work performed in drilling operations. *Id.* RPS contends that this interference proximately causes financial and reputational damage to RPS. *Id.*

The Land Defendants argue that RPS's tortious interference with contract claims fail because RPS does not allege any action taken by the defendants that somehow caused a third party to breach its contract with RPS. Dkt. 34. The Land Defendants further contend that RPS does not

---

[9] Neither party mentions the monetary aspect of being a "consumer," so the court does not address that requirement.

allege that they committed any acts with the knowledge or belief that it would interfere with a contract or that a third party breached its contract as a result of any actions taken by any of the defendants.  *Id.*  The Land Defendants point to case law that indicates that agents generally cannot be held liable for interfering in a party's contractual relations unless the agent acts outside of the scope of the agency agreement, as in acting solely for its own benefit.  *Id.* (citing *Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 575 (S.D. Tex. 2020) (Lake, J.)).  Since the second amended complaint contains no such allegations, the Land Defendants request that the court dismiss the tortious interference claims.  *Id.*

In response, RPS points out that it alleges in the second amended complaint that the Land Defendants intentionally interfered with the JOA contract and vendor contracts.  Dkt. 40.  RPS contends that the Land Defendants acted completely in their own best interests and against the interests of RPS, regularly violating the terms of the JOA and vendor agreements, which resulted in turmoil between Small and his long-term friends and business partners.  *Id.*  RPS asserts that the Land Defendants' actions caused significant reputational damage, and many of the contracts were terminated.  *Id.*  RPS asserts that the second amended complaint provides sufficient facts that the contracts were interfered with and by whom and how the interference occurred and describes how the Land Defendants acted outside the scope of their agency agreements when engaging in self-dealing, and how RPS was damaged as a result.  *Id.*

Under Texas law, "[t]he elements of tortious interference with contract are (1) a contract subject to interference; (2) a willful and intentional act of interference (3) that was a proximate cause of the plaintiff's damages; and (4) actual damage."  *Cuba v. Pylant*, 814 F.3d 701, 717 (5th Cir. 2016) (citing *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996)).  The plaintiff must show that "'the defendant knowingly induced one of the contracting parties to breach its

obligations under the contract.'" *Id.* (quoting *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 203, 210 (Tex. 1996)). "[A] person must be a stranger to a contract to tortiously interfere with it." *Morgan Stanley & Co., Inc. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997).

While the second amended complaint contains conclusory allegations that the Land Defendants willfully and intentionally interfered with the JOA and various vendor agreements and contracts and this caused actual financial and reputational damage to RPS (Dkt. 21 ¶¶ 97–100), there is very little in the factual allegations to support these allegations. *See generally* Dkt. 21. In its response, RPS points to several allegations in the second amended complaint that it contends support its tortious interference claims: (1) Mann executed the Five Star contract but failed to exercise due diligence to determine whether Five Star was competent; (2) Mann and TLD were RPS's agents and RPS directed Mann and TLD to perform detailed and complicated functions; (3) as agents, Mann and TLD had obligations to perform professionally and competently; (4) Mann and TLD and later Cypress failed to comply with COPAS, resulting in massive overbilling; (5) TLD and Cypress issued cash calls to each of the JOA participants and RPS paid every cash call, but the companies did not reconcile the amounts, causing competitive cash calls that RPS paid two to three times; (6) Cypress invoiced a specific RPS operator account for substantial amounts not related to operating or drilling, reworking, or plugging the well on the project related to that account; (7) the Land Defendants failed to keep track of and account for expenses and invoices; (8) TLD and Cypress failed to pay vendors for work performed, resulting in RPS paying the vendors directly and lawsuits against RPS, and TLD and Cypress received priority and preferential payment on their invoices at Mann's direction.  Dkt. 40 (citing Dkt. 21 ¶¶ 15, 21, 22, 24, 26, 36, 38, 39-40).  These allegations in the second amended complaint all relate to performance, or lack of performance, of the alleged agency agreements.

28

Since Mann and his companies allegedly worked as agents for RPS, they are not a third parties interfering with the contracts.  They were not strangers to the contracts.  *See Weatherford Int'l*, 452 F. Supp. 3d at 575 ("[A]gents of a party generally cannot be held liable for interfering with that party's contractual relationships unless the agent acts outside of the agency's scope."); *In re Vista Grp., Inc.*, 192 S.W.3d 759, 762 (Tex. 2006) (noting that "corporations must act through human agents").  Unless Mann's actions were "solely for his own benefit," he was not sufficiently working outside of the agency's scope to be held liable for tortious interference.  *Weatherford*, 452 F. Supp. 3d at 575 ("[A]ctions of mixed motive are not sufficient.").  The same could be said for Mann when he was working in his capacity of President of his companies.   Moreover, the allegations of wrongdoing with regard to performance of the contracts with others are more akin to negligent performance than willful and intentional misconduct meant to interfere.

The court finds that RPS has not sufficiently pled that Mann and his companies willfully and intentionally interfered with RPS's contracts for his sole benefit or for the sole benefit of his companies and that this interference was the proximate cause of damages to RPS.  Accordingly, the Land Defendant's motion to dismiss the tortious interference claims is **GRANTED**.

### 7.    Conversion

In the second amended complaint, RPS alleges that the Land Defendants paid monetary advances to Five Star, and Five Star "absconded with and converted the money."  Dkt. 21.  RPS then alleges that "Defendants breached a special trust or fiduciary duty to RPS and committed conversion against Plaintiff by wrongfully taking funds which were paid to RPS for work done on the well."  *Id.*  RPS does not state which defendants did what with regard to breaching this trust that allegedly led to conversion.  *Id.*

The Land Defendants move to dismiss the conversion claims against them because RPS groups the defendants all together in its conversion claim, including Five Star. Dkt. 34. Since the claims focus on Five Star "'absconding' with money," the Land Defendants assert that it is not even clear from the second amended complaint what they allegedly did. *Id.*

RPS asserts in its response that its conversion claims against all of the defendants are appropriate because Mann, via TLD and later Cypress, invoiced joint account participants, including RPS, for Five Stars' invoices. Dkt. 40. RPS contends that if TLD and later Cypress did not pay the Five Star invoices, then they converted the money for their own profits, and if they did pay Five Star for work not properly completed, it is also conversion. *Id.* RPS argues that discovery will reveal the amount of conversion by each defendant since TLD and Cypress kept the financial records. *Id.*

In Texas, a conversion claim has four elements:

> (1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property.

*Allan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 888 (Tex. App.—Dallas 2009, no pet.).

While the second amended complaint conclusorily alleges that the defendants, as a group, "wrongfully" took funds paid by RPS, it is unclear from the allegations in the second amended complaint how the Land Defendants assumed and exercised dominion and control over the funds in an unlawful and unauthorized manner. Moreover, there are no allegations that RPS asked for the return of the property, which is a necessary part of a conversion claim. *See* Dkt. 21. RPS has

not stated a claim for conversion.  The Land Defendants' motion to dismiss the conversion claims under Rule 12(b)(6) is **GRANTED**.

### 8.      Conspiracy

RPS alleges in its second amended complaint that the Land Defendants conspired with each other and conspired with Five Star to defraud RPS.  Dkt. 21.  The conspiracy allegations include overcharging RPS and diverting overcharges for their own uses when the funds should have been used to pay vendors.  *Id.*

The Land Defendants move for dismissal of the conspiracy claims, arguing that RPS's claims that Mann conspired with TLD and Cypress fail because a corporation cannot conspire against itself, and since Mann is an agent of TLD and Cypress, he could not have conspired with them.  Dkt. 34 (citing *Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996)).  The Land Defendants also point out that RPS alleges Cypress was an alter ego of TLD, and as an alter ego it could not conspire with itself.  *Id.*

RPS asserts that it pled sufficient facts that the Land Defendants conspired with Five Star to defraud RPS and that Mann, acting on his own behalf, conspired with TLD and later Cypress to divert and comingle funds.  Dkt. 40.  It does not provide any citations for this assertion other than citations to paragraphs 149 to 153 of the amended complaint.  *See id.*  In these paragraphs, RPS alleges that Mann and Five Star were co-conspirators to defraud RPS; that Mann, as principal of TLD and Cypress, conspired with Five Star to overcharge RPS and divert the overcharges; and that Mann conspired with TLD and Cypress to overcharge RPS and divert the overcharges.  Dkt. 21 ¶¶ 149–53.

A claim of civil conspiracy under Texas law requires proof of: "'(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one

or more unlawful, overt acts; and (5) damages as the proximate result.'" *Murray v. Earle*, 405 F.3d 278, 293 (5th Cir.2005) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983)).  To succeed on a conspiracy claim, a plaintiff must prove either "that the defendants conspired to accomplish an unlawful purpose or used unlawful means to accomplish a lawful purpose." *Id.* (citing *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex.1996)).  If a civil conspiracy is found, each co-conspirator is liable for the actions of any other co-conspirator.  *See Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex.1983).  "[T]he acts of a corporate agent are the acts of the corporation, and a corporation cannot conspire with itself." *Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996).

Since the Land Defendants' arguments are confined to the alleged conspiracy between Mann and his companies, the court addresses only that theory.  The court agrees with the Land Defendants that this claim is precluded by *Elliott*.  Accordingly, the motion to dismiss the conspiracy claim that Mann conspired with TLD and Cypress is **GRANTED**.

The court does not address the claim to the extent Five Star, which is no longer a defendant in this case, is alleged to have conspired with Mann and his companies.

## B.    Economic Loss Rule

The Land Defendants argue that the economic loss rule bars RPS's fiduciary duty claims, fraud claims, negligence claims, DTPA claims, and conversion claims.  Dkt. 34.  RPS argues that the economic loss rule applies when the only injury is economic loss to a contract, and the Land Defendants' actions caused more damage than contractual economic damage because they damaged RPS's reputation and goodwill.  Dkt. 40.

"In Texas, the economic loss rule 'restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence.'" *Dick v. Colo. Hous. Enters.*, No.

18-10900, 2019 WL 2909232, at *4 (5th Cir. July 5, 2019) (per curiam) (unpublished) (quoting *Lamar Homes, Inc. v. Mid–Continent Cas. Co*., 242 S.W.3d 1, 12–13 (Tex. 2007)). However, the economic loss rule "does not bar all tort claims arising out of a contractual setting." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). A party "states a tort claim when the duty allegedly breached is independent of the contractual undertaking *and* the harm suffered is not merely the economic loss of a contractual benefit." *Id.* (emphasis added). "[C]orporations, like people, have reputations and may recover for harm inflicted on them." *Waste Mgmt. of Tex. V. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 149 (Tex. 2014). Injury to a corporation's reputation is a non-economic harm, as the damages "'cannot be determined by mathematical precision; by their nature, they can only be determined by the exercise of sound judgment.'" *Id.* at 153-54 (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 605 (Tex. 2002)).

### 1. Fiduciary Duty Claims[10]

The Land Defendants move to dismiss the breach of fiduciary duty claims because they are barred by the economic loss rule. Dkt. 34. The Land Defendants assert that the only duties RPS alleges the defendants owed hinge on the alleged agreements. Dkt. 34 (relying on *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011)).

RPS contends that the duty owed to RPS by the Land Defendants arises from more than the written contracts and the economic loss rule therefore does not bar the fiduciary duty claims. Dkt. 40. It points out that the key consideration is whether the duty is imposed solely by the contract or if it is imposed by law. *Id.* (relying on *Sharyland*, 354 S.W.3d at 417).

---

[10] The court denied the motion to dismiss the breach of fiduciary duty claims for failure to state a fiduciary duty in Part III.A.1, *supra*.

Both parties rely on *Sharyland*.  In *Sharyland*, the Texas Supreme Court discussed the economic loss doctrine, in general.  The court pointed out that in *Formosa Plastics* it had "declined to extend [the rule] to a fraudulent inducement claim, even when the claimant suffered only economic losses to the subject of a contract" because "Texas has long imposed a duty to refrain from fraudulently inducing a party to enter into a contract, and [it is clear] that tort damages [a]re not precluded simply because a fraudulent representation caused only an economic loss."  354 S.W.3d at 417 (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998)).  It then listed the following types of "tort claims for which courts have allowed recovery of economic damages even absent physical injury or property damage": negligent misrepresentation, legal or accounting malpractice, breach of fiduciary duty, fraud, fraudulent inducement, tortious interference with contract, nuisance, wrongful death claims related to loss of support from the decedent, business disparagement, and some statutory causes of action. *Id.* at 418–19 (citations omitted).  While the *Sharyland* court provided this broad list of types of cases in which economic damages have been allowed in addition to the contractual claims, "[t]here is a lack of uniformity across jurisdictions regarding the kinds of tort actions to which the economic loss rule is to be applied."  Jim Wren, *Applying the Economic Loss Rule in Texas*, 64 Baylor L. Rev. 204, 213 (2012).  However, numerous courts have held that the rule does not apply to a breach of fiduciary duty claim, and the *Sharyland* court specifically noted that it has not applied the rule in this type of case. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, No. H-10-171, 2011 WL 1232352, at *21 n.7 (S.D. Tex. Mar. 31, 2011) (Rosenthal, J.) (collecting cases from other jurisdictions that found the rule did not apply to fiduciary duty claims and finding a citation to an Ohio case that held otherwise "not persuasive").

Recently, the Texas Court of Appeals in San Antonio provided significant guidance on the application of the economic loss rule in a case involving a claim for breach of fiduciary duty in *Shopoff Advisors, LP v. Atrium Circle GP*, 596 S.W.3d 894, 909–10 (Tex. App.—San Antonio 2019, no pet. h.).  It noted that, regardless of the type of tort alleged, courts "look to the source of the alleged duty and the nature of the claimed injury" and pointed out that what is important is the substance of the claim, not the way it was pled.  *Shopoff Advisors*, 596 S.W.3d at 909.  The *Shopoff Advisors* defendant allegedly breached duties of loyalty, to make full disclosure, and "'to exercise a high degree of care to conserve the money and pay it only to the people entitled to receive it in accordance with the agreement,'" because it refused to release certain funds.  *Id.* (quoting the allegations).  The court found that this could have been a breach of the contract, but "it [was] insufficient to raise breach of fiduciary duty or misapplication of fiduciary funds [claim]."  *Id.*  Additionally, the alleged duty breached was not "separate from the alleged failure to comply with the contractual agreement.  *Id.*

It appears that most of the more recent cases turn on whether the defendant is alleged to have breached a duty that arose independently of the contract.  *E.g.*, *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 659 (W.D. Tex. 2019) ("Because a fiduciary duty may arise as a matter of law independent of the contract, dismissal of the breach of fiduciary duty claim at this motion to dismiss stage would be premature.").  Here, TLD's and Cypress's alleged fiduciary duties are contractual.  Mann's duty, however, is alleged to have existed outside of the contracts at issue.  Therefore, the court finds that the breach of fiduciary duty claims relating to Mann's companies are barred by the economic loss rule, but the claims as to Mann individually are not.  The motion to dismiss RPS's breach of fiduciary duty claims as to TLD and Cypress

because they are barred by the economic loss rule is **GRANTED**.  The motion as it relates to Mann individually is **DENIED**.

### 2.  Fraud Claims[11]

The Land Defendants argue that RPS's fraud claims against all of the Land Defendants are barred under the economic loss rule.  Dkt. 34.  They contend that these claims are all based on the defendants' obligations to follow COPAS accounting procedures and to account for the money being paid under the JOA and that the damages relate to how TLD and Cypress allegedly misallocated funds and overbilled.  Dkt. 34.

RPS argues that the economic loss rule does not apply to fraud claims as a matter of law because the parties to a contract have an independent duty not to commit the intentional act of fraud.  Dkt. 40 (citing *Barcenas v. Fed. Home Loan Mortg. Co.*, No. H-12-2466, 2013 WL 1425138, at *3 (S.D. Tex. Jan. 24, 2013) (Harmon, J.); *Formosa Plastics Corp. U.S.*, 960 S.W.2d at 47; *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 496 (Tex. 1991); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 619 (Tex. 1986)).

The Land Defendants assert in reply that all of the claims in the second amended complaint arise out of either written or verbal contracts and it is "a textbook economic loss situation." Dkt. 43.  The court will first consider the caselaw cited by the parties and then determine how the cases apply to the facts of this case.

In *Jim Walter Homes*, the Texas Supreme Court noted that the "contractual relationship of the parties may create duties under both contract and tort law."  711 S.W.2d at 618.  It found that

---

[11] The court granted the motion to dismiss the fraud claim against Mann in his individual capacity for failure to plead a direct personal benefit.  *See* Part III.A.3, *supra*.  The court addresses the economic loss rule arguments relating to Mann as well because it will be helpful in determining whether the claims should be dismissed with or without prejudice.

the "nature of the injury most often determines which duty or duties are breached" and if "the injury is only the economic loss of the subject of a contract itself, the action sounds in contract alone." *Id.*  The *Jim Walter Homes* case involved a home building contract gone wrong, and the Texas Supreme Court found that since the plaintiffs did not receive the house they were promised, the economic loss was the subject of the contract itself, and the case sounded in contract alone. *Id.* The tort at issue in *Jim Walter Homes* was gross negligence along with statutory DTPA claims, not fraud. *Id.*  Thus, it does not hold that the economic loss rule does not apply to fraud claims as a matter of law.

The *DeLanney* case also does not include a fraud claim.  The *DeLanney* plaintiff sued a telephone company for negligence and DTPA violations because his advertisement was not published in the phone book as promised.  809 S.W.2d at 493.  The trial court granted a directed verdict as to the DTPA claims, but negligence was submitted to the jury, which found the phone company liable for negligence. *Id.* at 494.  On appeal, two members of the three-judge panel affirmed the trial court; the dissenting judge argued that the claim sounded only in contract. *Id.* The Texas Supreme Court took up the case and agreed with the dissent. *Id.*  It pointed out that if the defendant's conduct gives "rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may . . . sound in tort." *Id.*  However, "if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Id.*  Additionally, the court should "examine the nature of the plaintiff's loss" and if "the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Id.*  The court determined that the telephone company's duty to publish the yellow pages advertisement was solely a contractual duty and the damages "were only for the economic loss caused by [the

telephone company's] failure to perform." *Id.* It held that the failure was a breach of contract, not a tort. *Id.*

*Formosa Plastics* did involve fraud allegations—specifically, fraudulent inducement. The Texas Supreme Court determined that its "*DeLanney* analysis is not applicable" to "preclude a recovery in tort for a fraudulent inducement of contract claim." 960 S.W.2d at 43. A contractor claimed that the company it had entered into a contract with for a building project made misrepresentations to entice a low bid. *Id.* at 44. The Texas Supreme Court specifically considered whether the contractor had "a viable fraud claim when it suffered only economic losses related to the performance and subject matter of the parties' contract, whether there was legally sufficient evidence of fraud, and whether there was legally sufficient evidence to support the entire amount of damages awarded." *Id.* The court rejected the application of *DeLanney*, noting that "it is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Id.* at 46. Moreover, "tort damages are not precluded simply because a fraudulent representation causes only an economic loss." *Id.* It held that "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Id.*

Thus, under *Formosa Plastics*, if RPS has stated the elements of a fraudulent inducement claim, the claim is not precluded by the economic loss rule. Therefore, the motion to dismiss the fraud claim under the economic loss rule is **DENIED** to the extent the claim is based on fraudulent misrepresentations that induced the alleged contractual relationship.

As to the failure to disclose claim, which relates to whether the Land Defendants had a fiduciary duty, RPS argues that the duty owed arose from more than the written contracts and that

the economic loss rule therefore does not apply.  Dkt. 40.  The Land Defendants assert that RPS is trying to bring fiduciary duty claims based on contractual obligations that the Land Defendants allegedly owe under the agency agreements, which it cannot do under the economic loss rule. Dkt. 43.  As determined above, the allegations in the second amended complaint indicate that Mann's fiduciary duties arose outside of the contract, but the duties of his companies are contractual.  Thus, to the extent the fraud claim is based on the failure to disclose by the companies, it is barred by the economic loss rule.   To the extent the claim is premised on Mann's responsibilities individually, it is not barred.  The motion to dismiss the failure to disclose claim against TLD and Cypress as barred by the economic loss rule is **GRANTED**.   The motion to dismiss the failure to disclose claim against Mann as barred by the economic loss rule is **DENIED**.

### 3.  Negligence Claims[12]

The Land Defendants argue that the economic loss doctrine bars RPS's negligence claims because they are all based on duties under the parties' agreements.  Dkt. 34.  Specifically, RPS alleges in the second amended complaint that the Land Defendants contractually agreed to perform duties as a reasonably prudent operator, to follow COPAS, and to conduct drilling and testing and perform all work at competitive rates, and RPS's negligence claims are based on these same duties. *Id.*

RPS contends that the economic loss rule does not bar its negligence claims because these claims are based on *how* the promised action was performed.  Dkt. 40.  It asserts that the Land Defendants promised to perform delegated operator services on behalf of RPS and failed.  *Id.*

---

[12] The court granted the motion to dismiss the negligence claims for failing to meet the Rule 8 pleading standard in Part III.A.4, *supra*.  The court addresses the economic loss rule arguments as well because it will be helpful in determining whether the claims should be dismissed with or without prejudice.

The Land Defendants assert in reply that the Texas Supreme Court has held that "'a cause of action for negligence could not be based on an allegation that a party had negligently failed to perform a contract because such a claim sounded in contract, not in tort.'"  Dkt. 43 (quoting *Formosa Plastics*, 960 S.W.2d at 43).

The court agrees that the duties at issue arose only because of the alleged contractual agreements and thus the claim for damages associated with the duties sounds only in contract.  *See DeLanney*, 809 S.W.2d at 494.  The motion to dismiss the negligence claims under the economic loss rule is **GRANTED**.

### 4.  DTPA Claims[13]

The Land Defendants, relying on *Crawford v. Ace Signs, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996), argue that the DTPA claims against TLD and Cypress are barred by the economic loss rule because the alleged misrepresentations are, at the core, misrepresentations that the defendants would perform under the contracts, which is a breach of contract claim.  Dkt. 34.

RPS contends that its DTPA claims stem from the fraud committed by the Land Defendants and involve much more than the mere breach of contract.  Dkt. 40.  It relies again on *Sharyland* and also points to two cases in which, according to RPS, the courts found that DTPA claims arising from misrepresentations that induced the plaintiff to enter into an agreement involved duties outside of the contract.  *Id.* (citing *Salek v. Suntrust Mortg. Inc.*, No. 4:18-cv-1664, 2018 WL 3756887 (S.D. Tex. Aug. 8, 2018), and *SCS Builders, Inc. v. Searcy*, 390 S.W.3d 534 (Tex. App.—Eastland 2012, no pet.)).

---

[13] The court denied the motion to dismiss the DTPA claims for failing to meet the Rule 8 pleading standard in Part III.A.5, *supra*.

In RPS's first case, *Salek*, Judge Atlas concluded that the plaintiff's DTPA claims were barred by the economic loss rule.  2018 WL 3756887, at *6.  The DTPA claim related to unconscionable conduct, and Judge Atlas noted that under Texas law courts must determine whether the alleged unconscionable conduct that forms the basis of the DTPA claim "could have resulted in the absence of a contract between the parties."  *Id.* (citations and quotations omitted). She acknowledged that the *Sharyland* court specifically mentioned a different section of the DTPA as an example of a claim that may not be barred by the economic loss rule, but found that the *Salek* plaintiff's DTPA claim rested solely on the premise that the defendant's breach of the contract at issue also constituted an unconscionable act in violation of the DTPA.  *See id.* at *7.  Judge Atlas determined that the claim could be asserted in contract only and was barred by the economic loss rule.  *Id.*  This case is not helpful to RPS.

The other case RPS cites, *SCS Builders*, is more helpful.  The Texas Court of Appeals in Eastland considered a case in which the defendants told the plaintiff she could trust them and was in good hands.  390 S.W.3d at 542.  The trial court found these assertions to be deceptive, false, and misleading acts under the DTPA, independent of the terms of the contract.  *Id.*  It held, specifying it was pursuant to the facts presented in that case, that the duty to refrain from engaging in or using deceptive practices under the DTPA was one that arose outside of or existed independently of the contract and was not later subsumed in the contract.  *Id.* at 540–42.

Here, as fully discussed above, the DTPA claims relate to the representations made by the defendants prior to entering into the agency agreements.  *See* Dkt. 21.  They are therefore independent of the duties in the agreements themselves.  Additionally, the harm alleged is not merely contractual because RPS alleges harm to its reputation.  Accordingly, the DTPA claims are

not barred by the economic loss rule.  The motion to dismiss the DTPA claims as barred by the economic loss rule is **DENIED**.

### 5.  Conversion[14]

The Land Defendants first note that it is unclear what alleged conversion is their fault as opposed to Five Star's, but that it appears the claim is that the defendants kept money that RPS paid under the agreements, which is properly a breach of contract claim, not a conversion claim. Dkt. 34.

RPS argues that it is conversion if the Land Defendants did not pay Five Star the money RPS paid the Land Defendants for Five Star's work, and that discovery will reveal the extent to which each defendant is liable.  Dkt. 40.  RPS additionally argues that the conversion claims are not barred by the economic loss rule under *Sharyland*.  *Id.* (citing *Sharyland*, 354 S.W.3d at 418–19).

*Sharyland* does not specifically address conversion.  *See generally Sharyland*, 354 S.W.3d 407.  The court therefore turns to the basics of the economic loss rule—whether the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not simply the economic loss of the benefit due under the contract.  Here, the conversion claim relates to the Land Defendants not complying with their duties under the contract and the contractual damages would include funds that they failed to distribute pursuant to the contractual terms.  Therefore, the conversion claim appears to be a breach of contract claim and is barred by the economic loss rule. *Cf. Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 7126 (5th Cir. 2015) (holding

---

[14] The court has dismissed the conversion claims for failing to meet the Rule 8 pleading standard in Part III.A.7, *supra*.  The court addresses the economic loss rule arguments as well because it will be helpful in determining whether the claims should be dismissed with or without prejudice.

that a conversion claim was barred by the economic loss rule because it was "based on inflation of the commission and transferring expiring policies [that] stem[med] from violations of contractual provisions"); *Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP*, 599 S.W.3d 618, 635–36 (Tex. App.—Dallas 2020, no pet. h.) (finding that the economic loss rule barred a conversion claim when the claim "rest[ed] on the fact that [the defendant's] conduct deprived [the plaintiff] from receiving its bargained for consideration" and the claim thus sounded in contract).  The motion to dismiss the conversion claim pursuant to the economic loss rule is **GRANTED**.

## C.  Rule 9(b) Arguments

While many of RPS's claims fail under Rule 8 and/or the economic loss rule, the court additionally considers the Land Defendants' arguments that the claims are not pled with particularity as required by Rule 9(b).  The Rule 9(b) arguments relate to RPS's fraud or fraudulent inducement and fraud by nondisclosure claims, which RPS does not dispute must be pled with particularity, and also RPS's DTPA and fiduciary duty claims, which RPS contends need not be pled with particularity. The court will first address the fraud claims that are clearly within the ambit of Rule 9(b) and which were not fully considered above, and then consider whether the fiduciary duty and DTPA and claims must meet the Rule 9(b) standard and, if so, whether RPS has met that standard.

### 1.  Fraud/Fraudulent Inducement[15]

In the second amended complaint, RPS contends that Mann, individually and on behalf of TLD and Cypress, falsely represented that he and his employees had experience and expertise in

---

[15] The court denied the motion to dismiss the fraudulent inducement claim pursuant to the economic loss rule in Part III.B.2, *supra*.

operating oil wells. Dkt. 21.  RPS alleges that the defendants, in fact, had not previously performed services as an operator's agent.  *Id.*  RPS asserts that Mann, individually and on behalf of both companies, made these representations knowing they were false or without knowledge as to their veracity and with the intent that RPS act upon the representations, RPS relied on the representations, and RPS, which was harmed as a result, would not have entered into agency contracts but for Mann's representations.  *Id.*

The Land Defendants argue that the fraudulent inducement claim is not pled with particularity because (1) RPS states that Mann made the misrepresentations, but it does not state *to whom* these misrepresentations were made; (2) RPS does not say *when* the alleged misrepresentations were made; (3) RPS does not state *how* the misrepresentations were made— verbally or in writing; and (4) RPS does not state in what capacity Mann made the allegation and instead lumps all three Land Defendants together.  Dkt. 34.  The Land Defendants assert that alleging that Mann, individually and on behalf of TLD and Cypress, made certain representations "does not count as particularity" because RPS does not say whether Mann made the representation in his individual capacity or in his capacity as owner of TLD and Cypress.  *Id.*  The Land Defendants argue that if RPS means that each alleged misrepresentation was made on Mann's own behalf as well as on behalf of both companies, it is not plausible because each of the two companies operated at different points in time.  *Id.*

RPS contends that the fraud allegations in this case are complex because the misrepresentations by each of the defendants happened over the course of several years.  Dkt. 40. RPS argues that, regardless, the second amended complaint sufficiently states the who, what, when, where, and how of the alleged fraudulent representations.  *Id.*  The *who* is Mann, TLD, and Cypress; the *what* is submitting inflated invoices and falsely claiming competence in drilling wells;

the *where* is in offices in Houston and at the Norma #1 well usually over the phone to RPS in

Tulsa, Oklahoma[16]; the *when* is continuously from 2016 until the end of the Land Defendants' role

in the project; and the *how* is falsely overbilling and seeking reimbursement for shoddy work.  *Id.*

RPS asserts that Mann exerted his influence on "a much older Mr. Small" and took more and more

control over Small's business.  *Id.*

The Land Defendants assert in reply that RPS's response regarding the "where"—Houston,

Texas, Walker County, Texas, or Tulsa, Oklahoma—is insufficient under Rule 9(b).  Dkt. 43.

They argue that if "parties could meet Rule 9(b) by merely pleadings that the fraud took place

somewhere in, say, Texas, or the United States, or on planet earth, it wouldn't be much of a

requirement."  *Id.*  They also point out that while the response states that Small was the recipient

of the representations, and they were via email and phone, this allegation does not appear in the

second amended complaint.  *Id.*  And the "when," which the response indicates is from December

2016 through April 2020, is also not in the second amended complaint and not nearly specific

enough to meet the pleading standard. *Id.*

Under Texas law, there is a "duty to abstain from inducing another to enter into a contract

through the use of fraudulent misrepresentations."  *Formosa Plastics*, 960 S.W.2d at 48.  To state

a claim of fraudulent inducement under Texas law, the plaintiff must allege the basic elements of

fraud: "(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without

knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4)

which the other party relied on and (5) which caused injury."  *Anderson v. Durant*, 550 S.W.3d

---

[16] RPS points out that its second amended complaint alleges the events giving rise to its claims
occurred in this district.  Dkt. 40.  It further states that if the defendants need to know exactly
where they were located when they sent emails or took calls, "perhaps their cellular phone
providers can provide them that information."  *Id.*

605, 614 (Tex. 2018). The misrepresentation in a fraudulent inducement case must be "a false promise of future performance made with a present intent not to perform," and "the existence of a contract is an essential part of [the] proof" of a fraudulent inducement claim. *Id.* Claims alleging fraudulent inducement, like general fraud claims, must be pled with particularity. *Bohnsack v. Varco*, 668 F.3d 262, 277 (5th Cir.2012).

Rule 9(b) is meant to be a "gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). To that end, it is appropriate that RPS be held to the requirement to let the defendants know what statements were made by whom, when they were made, and how they were made. While it is relatively clear from the second amended complaint that RPS contends Mann made representations about his or his staff's qualifications that were not true on more than one occasion, and this likely occurred at or around the time RPS agreed to allow Mann's companies to act as RPS's agents, the second amended complaint does not sufficiently allege when and how these representations were made. While RPS asserts in its response that the representations were made via telephone calls or emails, the second amended complaint does not state that. And while the second amended complaint notes Mann *acted* as RPS's agent, and that Mann had induced RPS into allowing him and his companies to act as RPS's agent, it does not state when this oral agreement (or these agreements) that it alleges it was fraudulently induced to enter into occurred. *See* Dkt. 21. As to the general fraud claim, there is no indication when misrepresentations were made by which particular defendant.

The case RPS cited in support of its contention that its pleading meets the standard for the time and place of the fraudulent representation is *Schouest v. Medtronic, Inc.*, 92 F. Supp. 3d 606, 610 n.2 (S.D. Tex. 2015) (Miller, J.). In the cited portion of that case, this court noted that some

courts have determined that the Rule 9(b) pleading standards should be relaxed if the plaintiff is unable, without discovery, to obtain information that is in the defendant's possession. *Schouest*, 92 F. Supp. 3d at 610 n.2. Here, however, if the alleged misrepresentations were made to RPS's owner over the phone or via email, then the details are not solely in the defendants' possession.

The second amended complaint thus does not meet the Rule 9(b) standard of stating the fraud or fraudulent inducement claim with particularity. The motion to dismiss the fraud and fraudulent inducement claims is therefore **GRANTED**.

### 2.      Fraud by Nondisclosure[17]

In the second amended complaint, RPS contends that Mann, on behalf of himself and TLD and Cypress, concealed facts regarding his and his employees' lack of experience and had a duty to disclose their lack of experience to RPS. Dkt. 21. RPS alleges that this failure to disclose was material to RPS's decision to enter into the oral agency agreements and delegate responsibilities to Mann, TLD, and Cypress.[18] *Id.* RPS asserts that Mann took advantage of Small's trust in him based on their decades long business relationship. *Id.* RPS further asserts that Mann did not advise RPS when it became apparent that he and his companies could not fulfill their promises and that Mann and his companies intended to induce RPS into entering into agency agreements by failing

---

[17] The court granted the motion to dismiss the failure to disclose claim against TLD and Cypress as barred by the economic loss rule and denied the motion to dismiss the failure to disclose claim against Mann as barred by the economic loss rule in Part III.B.2, *supra*. The court granted the motion to dismiss the fraud claim against Mann in his individual capacity for failure to plead a direct personal benefit in Part III.A.3, *supra*. The court will consider, in this part, the sufficiency of these claims as to all defendants under Rule 9(b) in an abundance of caution.

[18] RPS alleges on the one hand that it was fraudulently induced into entering into agreements with the Land Defendants because Mann represented that they had experience and on the other hand that the Land Defendants are liable for negligent misrepresentation because they did not say they were not experienced.

to disclose their lack of experience and the failure to disclose resulted in injury because RPS relied on Mann's nondisclosure to its detriment.  *Id.*

The Land Defendants argue that these allegations suffer from the same problems as the fraudulent inducement claims as there is no indication of *when* Mann allegedly concealed facts, *from whom* he concealed them, *where* this took place, *how* it took place, or any specifics about Mann's *scienter*.  Dkt. 34.  Even though the second amended complaint states that Mann should have made a disclosure when it became clear that he and his companies were incapable of fulfilling their promises, there are no allegations about precisely when this took place, where, or what led to the realization.  *Id.*  The Land Defendants also assert that there is no factual basis alleged for the duty to disclose.  *Id.*

RPS argues that each of the Land Defendants intentionally concealed pertinent information from RPS with the specific intent to induce RPS to continue providing funds.  Dkt. 40.  RPS asserts that it was in an agency relationship as well as a confidential and special relationship with Mann, TLD, and Cypress, and, under Texas law, "fiduciaries must make full disclosure of all material facts to their principles [sic]."  *Id.* (citing *Roquemore v. Ford Motor Co.*, 290 F. Supp. 130, 135 (N.D. Tex. 1967)).  It contends that Mann owed the duty of full disclosure to RPS.  *Id.*  It also contends that the Land Defendants continued to conceal "their incompetence" knowing that disclosure would lead to their termination and end their access to RPS's funds.  *Id.*

When the plaintiff alleges fraud by omission, "[c]ourts in Texas have consistently held that fraud by nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose."  *United Tchr. Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 567 (5th Cir.

2005).  A duty to disclose arises between parties in a confidential or fiduciary relationship or between non-fiduciaries when "one party learns later that his previous affirmative statement was false or misleading."  *Union Pac. Res. Grp., Inc. v. Rhone–Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001); *Tempo Tamers, Inc. v. Crow–Hous. Four, Ltd.*, 715 S.W.2d 658, 669 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (A duty to disclose arises when "a party later learns that previous affirmative representations are in fact false.").

First, the court must determine whether RPS has sufficiently alleged a duty to disclose, which turns on whether RPS has adequately pled a fiduciary relationship.  In Texas, "agency is a special relationship that gives rise to a fiduciary duty."  *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002) (citing *Kinzbach Tool Co.* 160 S.W.2d at 513).  Since RPS alleges that each defendant entered into an agency agreement with RPS, this is an allegation of a fiduciary relationship.

With regard to whether the remaining elements of failure to disclose have been alleged with particularity, the court notes that only Mann would know when he became aware that he and his companies could not fulfill their promises.  This is thus a typical example of the plaintiff not being able to ascertain this information without discovery.  *Schouest*, 92 F. Supp. 3d at 610 n.2.  The court finds that it is premature to dismiss this claim pursuant to Rule 9(b).  The motion to dismiss the fraud by nondisclosure claim pursuant to Rule 9(b) is therefore **DENIED**.

### 3.    Fiduciary Duty[19]

RPS alleges in the second amended complaint that the Land Defendants owed a fiduciary to RPS as its agents and breached those duties by redundant billing, overcharging, self-dealing, and failing to disclose conflicts of interest, which RPS asserts resulted in excessive costs, lost business opportunities, and damage to RPS's reputation.  Dkt. 21.  The Land Defendants argue that RPS has not met the pleading standard for its breach of fiduciary duty claims, which they contend must be pled with particularity.  Dkt. 34.  RPS argues that the long-term relationship and agency agreements give rise to a fiduciary duty owed by Mann and his companies to perform the work competently and with reasonable skill and to maintain and account for the funds.  Dkt. 40. They assert that the pleadings provide facts to give fair notice of the basis of this cause of action as to each defendant.  *Id.*

While generally breach of fiduciary duty claims must only meet the requirements of Rule 8(a), when the claim is predicated on fraudulent conduct, courts require Rule 9(b) specificity.  *See B Choice Ltd. v. Epicentre Dev. Assocs.*, No. H-14-2096, 2015 WL 4586719, at *9 (S.D. Tex. Apr. 30, 2015) (Johnson, M.J.) ("[O]nly a claim for breach of fiduciary duty predicated on fraud is held to the higher Rule 9(b) standard."); *Ingalls v. Edgewater Priv. Equity Fund III, L.P.*, CIV.A. H-05-1392, 2005 WL 2647962, at *5 (S.D. Tex. Oct. 17, 2005) (Ellison, J.) (citation omitted); *see also Brown v. Bilek*, CIV.A. H-09-2193, 2009 WL 2601615, at *2 (S.D. Tex. Aug. 20, 2009) (Harmon, J.) ("When the breach of fiduciary duty claim is predicated on fraud, Rule 9(b) is

---

[19] The court denied the motion to dismiss the breach of fiduciary claims for failure to meet the Rule 8 pleading standard in Part III.A.1, *supra*, and it denied the motion to dismiss the claims as barred by the economic loss rule as to Mann but granted it as the TLD and Cypress in Part III.B.1, *supra*.  The court considers whether the claim is adequately pled under Rule 9(b) as to all defendants in an abundance of caution.

implicated."), *aff'd*, 401 F. App'x 889 (5th Cir. 2010) (unpublished) (noting that "[c]ourts have also applied the particularity requirement of Rule 9(b) to breach of fiduciary duty claims predicated on fraud" and affirming the district court's dismissal of that claim).  However, "'particularity is only required to the extent that a plaintiff in fact alleges fraud.'"  *Ingalls*, 2005 WL 2647962, at *5 (quoting *Tigue Inv. Co. v. Chase Bank of Tex., N.A.*, No. 3:03 CV 2490 N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004)).  In *Ingalls*, Judge Ellison found that the claim that the defendants breached their fiduciary duties by defrauding the plaintiff of money and business opportunities sounded in fraud, and applied Rule 9(b).  *Id.*  The complaint did not meet the Rule 9(b) standard because, among other problems, the plaintiff grouped all the defendants together.  *Id.* at *5–6.

Here, the court must determine whether the breach of fiduciary duty claims sound in fraud. In the second amended complaint, RPS alleges that the Land Defendants owed the following duties to RPS: loyalty and utmost good faith, candor, refraining from self-dealing, acting with integrity of the strictest kind, fair and honest dealing, and full disclosure. Dkt. 21.  The alleged breaches of these duties were "redundant billing, overcharging, self-dealing, and failing to disclose conflicts of interest."  *Id.*  The fraud claims, on the other hand, mostly relate to representing the defendants had experience when they did not, though they also relate to failing to advise RPS when they learned they could not handle the job.  *Id.*  However, to the extent RPS seeks to assert that the representations made to get RPS to enter into the contracts or failing to disclose the defendants' alleged incompetence were in violation of the alleged fiduciary duties, such as the duties of candor and full disclosure, these allegations would be intertwined with the fraud claims and require particularized pleading.  Thus, the motion to dismiss any breach of fiduciary duty claims that are premised on the same facts as the fraudulent inducement claim is **GRANTED**, and those claims

are **DISMISSED** because RPS does not plead which particular defendant did what, when, where, and how.

With respect to breach of fiduciary duty claims that are intertwined with the fraud by nondisclosure or the failure to disclose claims, as the court noted above with regard to the fraud by nondisclosure claims themselves, it is premature to dismiss these claims under Rule 9(b) because the facts are solely within the possession of the defendants and discovery is needed to plead them with particularity.  The motion to dismiss the breach of fiduciary duty claims under Rule 9(b) is thus **DENIED** with respect to the breach of fiduciary duty claims that depend on facts *not* intertwined with the fraud claims and **DENIED WITHOUT PREJUDICE** with respect to any claims that are intertwined with the fraud by nondisclosure claims.

**4.     DTPA**[20]

In the second amended complaint, RPS contends that RPS was a consumer and TLD and Cypress were in the business of offering agency services for an operator. Dkt. 21.  RPS alleges that TLD and Cypress wrongfully represented that their services had characteristics or benefits they did not, in violation section 17.46(b)(5), (b)(7), (b)(22), and (b)(24) of the Texas Business and Commerce Code. *Id.*  RPS asserts that TLD and Cypress also failed to disclose information about their services that was known at the time of the transaction in order to induce RPS into a transaction, in violation of section 17.46(b)(24).  *Id.*

The Land Defendants argue that RPS's DTPA claim must be pled with particularity because it depends on the same facts as its fraud claim.  Dkt. 34 (citing *Polar Pro Filters Inc. v.*

---

[20] The court has denied the motion to dismiss the DTPA claims against TLD and Cypress under Rule 12(b)(6) for failing to adequately allege consumer status and denied the motion to dismiss the DTPA claims as barred by the economic loss rule in Part III.A.5 and Part III.B.4, *supra*.

*FrogSlayer, LLC*, No. H-19-1706, 2019 WL 5400934, at *5 (S.D. Tex. Oct. 22, 2019) (Rosenthal, J.)).  RPS does not address this argument.  The court agrees with the Land Defendants that the DTPA claim depends on the same facts as the fraud claim and must be pled with particularity.

The court now turns to whether RPS otherwise pled the DTPA claim with particularity.  The who is Mann, the what is representing that he and his staff had expertise to act as operators that they did not have.  The when, however, is an issue.  Like with the fraudulent inducement claim, RPS does not state when the alleged affirmative misrepresentations were made, at least initially.  The motion to dismiss the DTPA claims for failure to plead with particularity is **GRANTED**.

## IV. AMENDMENT

RPS does not specifically move to amend, but it requests that the motion to dismiss be denied "and all other just relief."  Dkt. 40.  The Land Defendants urge the court *not* to grant leave to amend because RPS has already had more than one opportunity to amend and has not fixed the problems with its complaint.  Dkt. 43.  While this point is well taken, the court also notes that RPS's previous revisions of its complaint were without the benefit of the court's analysis of the Land Defendants' arguments.

Under Federal Rule of Civil Procedure 15, the court "should freely give leave [to amend] when justice so requires," and the court is given broad discretion in granting leave.  Fed. R. Civ. P. 15(a)(2); *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 386 (5th Cir. 2003).  Denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment.  *See Rosenblatt v. United Way of Greater Hous.*, 607 F.3d 413, 419 (5th Cir. 2010).  The Land Defendants' arguments relate solely to the

repeated failure to cure deficiencies reason, but the court will also consider whether amendment would be futile in the interest of judicial efficiency.

Here, the claims that are being dismissed are (1) the breach of fiduciary duty claims against TLD and Cypress (not plausible and barred by the economic loss rule); (2) the fiduciary duty claims premised on the same facts as the fraudulent inducement claim (not pled with sufficient particularity); (3) the breach of the oral agency agreements against all defendants (not plausible); (4) the breach of the written contract claim against Mann, to the extent such a claim is asserted (not plausible); (5) the fraud claim against Mann (not plausible); (6) the fraud and fraudulent inducement claims against all the defendants (not pled with sufficient particularity); (7) the fraud claim based on failure to disclose against TLD and Cypress (barred by the economic loss rule); (8) the negligence claim against Mann (not plausible), and the negligence claims against all defendants (not plausible and barred by the economic loss rule); (9) the DTPA claims against TLD and Cypress (not pled with sufficient particularity); (10) the tortious interference claims against all defendants (not plausible); (11) the conversion claims against all defendants (not plausible and barred by the economic loss rule); and (12) the conspiracy claim that Mann conspired with TLD and Cypress (not plausible).

The court finds that it would be futile to amend the claims barred by the economic loss rule, as RPS cannot change the fact that generally the duty it contends is owed under those claims is a duty under the alleged contracts.  Amendment of the breach of written contract claim against Mann, to the extent there is such a claim, and the claim there was an alleged conspiracy between Mann and his companies also cannot be cured with more alleged facts.  The other claims, however, can potentially be cured if RPS has facts to support them now that it has the guidance offered in this memorandum opinion and order.  Therefore, leave to amend is **GRANTED IN PART**.  RPS

may amend (1) the breach of fiduciary duty claims against Mann that are premised on the same facts as the fraudulent inducement claim; (2) the breach of the oral agency agreements against all defendants; (3) the fraud and fraudulent inducement claims against all the defendants; (4) the DTPA claims against TLD and Cypress; and (5) the tortious interference claims against all defendants.

If RPS desires to attempt to rectify the pleading deficiencies with regard to these specific claims, it shall do so **within twenty days** of the date of this order.  If RPS fails to do so, these claims will be dismissed with prejudice.

## V. CONCLUSION

The Land Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART.

- It is GRANTED with respect to the breach of fiduciary duty claims against TLD and Cypress, which are DISMISSED WITH PREJUDICE.

- The motion to dismiss the breach of fiduciary duty claim against Mann is also GRANTED with respect to any breach of fiduciary duty claim against Mann that is premised on the same facts as the fraud claim, but the breach of fiduciary duty claim against Mann, to the extent it is based on the same facts as the fraud claim is DISMISSED WITHOUT PREJUDICE.

- It is GRANTED with respect to the breach of oral agency contract claims against all defendants, and those claims are DISMISSED WITHOUT PREJUDICE.

- It is GRANTED with respect to the breach of written contract claim against Mann, to the extent RPS meant to assert such a claim, and that claim is DISMISSED WITH PREJUDICE.

- It is GRANTED with respect to the fraud/fraudulent inducement claims against all defendants, and those claims are DISMISSED WITHOUT PREJUDICE.

- It is GRANTED with respect to the fraud by nondisclosure claims against TLD and Cypress, and those claims are DISMISSED WITH PREJUDICE.

- It is GRANTED with respect to the negligence claims against all the defendants, and those claims are DISMISSED WITH PREJUDICE.

- It is GRANTED with respect to the DTPA claims against TLD and Cypress, and those claims are DISMISSED WITHOUT PREJUDICE.

- It is GRANTED with respect to the tortious interference with contract claims against all the defendants, and those claims are DISMISSED WITHOUT PREJUDICE.

- It is GRANTED with respect to the conversion claims against all of the defendants, and those claims are DISMISSED WITH PREJUDICE.

- It is GRANTED with respect to the conspiracy claim that Mann conspired with TLD and Cypress, and that claim is DISMISSED WITH PREJUDICE.

The motion to dismiss is otherwise DENIED.

The court GRANTS RPS leave to amend with regard to the claims that are dismissed without prejudice above.  However, RPS shall amend its complaint **within twenty days of the date of this order** if it desires to do so.  Otherwise, these claims will be dismissed with prejudice.

Signed at Houston, Texas on December 7, 2020.

Gray H. Miller
Senior United States District Judge

56