Case 4:20-cv-01490 Document 76 Filed on 07/19/21 in TXSD Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
July 19, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| R.P. SMALL CORP., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-20-1490 |
| | § | |
| THE LAND DEPARTMENT, INC. *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to dismiss filed by defendants The Land Department, Inc. ("TLD"), Cypress Rock Land Services, LLC ("Cypress"), and Michael H. Mann (collectively, the "Land Defendants"). Dkt. 55. While the motion as written seeks dismissal of the claims in the third amended complaint, the parties have agreed that the motion, response, and reply "are applicable to the Fourth Amended Petition." Dkt. 68. The court has therefore considered the motion to dismiss (Dkt. 55), response (Dkt. 61), and reply (Dkt. 62), as if directed towards the fourth amended complaint (Dkt. 67), along with the facts and claims set forth in the fourth amended complaint and the applicable law, and the court finds that the motion to dismiss should be **GRANTED IN PART AND DENIED IN PART**.

**I. BACKGROUND**

The is a case about a long-term business relationship between Richard Small, who owns plaintiff R.P. Small Corp. ("RPS"), and Mann, who is the president of TLD and Cypress. According to the fourth amended complaint, Mann, who is a certified professional landman, "has been advising, guiding, and assisting Small in his business ventures for over twenty (20) years." Dkt. 67. RPS is licensed to be an operator of oil and gas wells, which means the overall manager

and decision-maker for drilling projects. *Id.* RPS contends that Small trusted Mann implicitly and relied on him more and more as Small grew older. *Id.* Mann is in his 70s, and Small is 91. *Id.*

A. **Factual Allegations**

In 2017, Mann allegedly came up with the idea to develop a wildcat well in Walker County, Texas, and RPS entered into a Land Services Agreement with TLD ("the "TLD Agreement"), which included typical landman services and "other related services." *Id.* (citing Dkt. 67, Ex. 1). This agreement covered land located in Walker and San Jacinto Counties. *Id.* Small brought together business associates to fund the drilling of the Norma #1 Well, and RPS and its business partners thereafter entered into a Joint Venture Agreement ("JVA") and Joint Operating Agreement ("JOA") to develop the well. *Id.* RPS was the operator, and the other investors were nonoperators. *Id.*

RPS alleges that shortly after RPS and TLD entered into the TLD Agreement, Mann represented to Small that he and TLD had the experience to handle operator responsibilities as RPS's operator's agent for the Norma #1. *Id.* RPS authorized Mann to transact business and manage operations on its behalf. *Id.* Mann, in his individual capacity on behalf of RPS, executed a drilling Master Services Agreement ("Five Star MSA") between RPS and Five Star Petroleum. *Id.* According to RPS, Mann represented to RPS that Five Star was competent and qualified, and RPS authorized Mann to enter into the contract based on those representations. *Id.*

Unfortunately, according to RPS, Mann's representation that he was able to undertake operator duties was false, as neither Mann nor any TLD employees had experience as operators, and Mann knew it. *Id.* RPS argues that Mann took advantage of his personal and professional relationship with Small and made false representations about his and TLD's expertise with the intent that RPS rely on the representations and enter into agency agreements so that Mann and

TLD could use these agreements to engage in self-dealing and overbilling. *Id.* RPS contends that Mann and TLD, and later Cypress, failed to comply with the requirements of the Counsel of Petroleum Accountants Societies, as required by the JOA, resulting in overbilling. *Id.* Eventually, this led to several JOA participants not participating in a sidetrack project and refusing to pay their portion of the expenses under the JOA. *Id.* Additionally, RPS asserts that Mann and TLD, and later Cypress, sent RPS duplicate invoices and accepted payments for these, knowing the amounts were not actually due. *Id.* According to RPS, TLD and later Cypress received priority and preferential treatment for their invoices from RPS's operating funds, at Mann's direction. *Id.* RPS also asserts that, upon information and belief, Mann diverted funds into accounts for his personal use. *Id.* Additionally, RPS contends that Mann controlled Five Star's actions, and that he and TLD (and later Cypress) purposefully delayed completion of the well because they earned more money during drilling than they would after completion. *Id.*

RPS contends that Mann ceased doing business as TLD in October 2019 and formed Cypress with the same employees. *Id.* Mann allegedly assured RPS that Cypress could fulfill the agency agreement previously filled by TLD. *Id.* RPS and Cypress entered into a written Land Service Agreement in October 2019 (the "Cypress Agreement") that was similar to the agreement RPS had with TLD. *Id.*

B. **Procedural History**

RPS filed this lawsuit against the Land Defendants and Five Star on April 27, 2020. Dkt. 1. RPS later voluntarily dismissed its claims against Five Star. Dkt. 37. RPS amended its complaint twice, and the Land Defendants filed motions to dismiss each time. Dkts. 13, 17, 21, 34. The court issued a memorandum opinion and order in which is dismissed some of the claims in RPS's second amended complaint with prejudice, dismissed others without prejudice, and granted leave

3

to amend the claims that were non-prejudicially dismissed. Dkt. 48. RPS amended its complaint two more times. Dkts. 53, 67.

The current complaint (the fourth amended complaint) contains the following claims: (1) breach of the written contracts against TLD and Cypress; (2) fraudulent inducement and tortious interference against Mann, TLD, and Cypress; and (3) breach of fiduciary duty and fraud by nondisclosure against Mann, individually. Dkt. 67. RPS also claims in the fourth amended complaint that Mann treated TLD and Cypress as alter egos for his personal benefit and that Mann, TLD, and Cypress are thus jointly liable for damages under an alter ego theory. *Id.*

**C.  Arguments**

The Land Defendants move to dismiss all claims except the claims for the breach of the TLD Agreement and breach of the Cypress Agreement. Dkt. 55. They argue that the court should dismiss RPS's alter ego claims because RPS fails to allege that Mann used the corporate structure for an illegitimate purpose and even if it had, it does not sufficiently allege alter ego because it provides only conclusory allegations reciting the elements of alter ego. Dkt. 62. The Land Defendants seek dismissal of the breach of fiduciary claim against Mann under the economic loss rule and because it is barred by Section 21.223 of the Texas Civil Practices and Remedies Code. *Id.* Additionally, they assert that the tortious interference claims against all the Land Defendants fail because the fourth amended complaint does not allege that Mann, TLD, or Cypress were acting solely for their own benefit and the allegations actually indicate a mixed motive. *Id.* There are also, according to the Land Defendants, no allegations that indicate willful or intentional interference with any contract. *Id.*

RPS contends that it pled sufficient facts to support the breach of fiduciary duty and fraud by nondisclosure claims against Mann, individually, the tortious interference with the Five Star

4

MSA against each Land Defendant, and the alter ego claims relating to Mann, and it asserts that Section 21.223 does not apply to actions Mann took in his personal capacity. Dkt. 61.

The motion is now ripe for disposition.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible— enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

In addition to meeting the plausibility standard, under Federal Rule of Civil Procedure 9(b), if a party is alleging fraud or mistake, the pleading must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (noting that Rule 9(b) does not "supplant" Rule 8(a)). However, this particularity requirement "does not 'reflect a subscription to fact pleading.'" *Grubbs*, 565

F.3d at 186 (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)). Instead, pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which . . . must make relief plausible, not merely conceivable, when taken as true." *Id.* (internal quotations omitted) (referring to the standard enunciated in *Twombly*).

The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002). Thus, Rule 9(b) generally requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). However, "Rule 9(b)'s ultimate meaning is context-specific." *Grubbs*, 565 F.3d at 189. Thus, "[d]epending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand." *Id.*

### III. ANALYSIS

RPS has attempted to address the deficiencies in its pleadings by amending certain claims and dropping others. The Land Defendants argue that the changes are not sufficient and that this case should only be about the alleged breach of the TLD and Cypress Agreements. The court will first address the argument that the breach of fiduciary duty claim against Mann, individually, is barred by the economic loss rule. It will then turn to whether the fiduciary duty and fraudulent inducement/fraud by nondisclosure claims against Mann, individually, are barred by section

21.223 of the Texas Civil Practices and Remedies Code. Then, it will consider the alter ego claims, the tortious interference claims, and the fraudulent inducement claims *in seriatim*.

A.   **Economic Loss Rule**

The court addressed the Land Defendants' arguments that the economic loss rule bars RPS's fiduciary duty claims, fraud claims, negligence claims, DTPA claims, and conversion claims in its order on the motion to dismiss the second amended complaint. *See* Dkt. 48. The court did not dismiss the breach of fiduciary duty claims asserted against Mann individually because RPS alleged a duty that existed outside of a contract. *Id.* RPS has dropped all of the tort claims that court originally found were barred, but it has retained the breach of fiduciary duty claim against Mann individually.

The Land Defendants assert that the court should now dismiss the breach of fiduciary duty claim against Mann individually because "RPS has changed its tune" in the fourth amended complaint and the claim now falls under the alleged oral agency agreement between RPS and Mann. Dkt. 55. The Land Defendants agree that RPS alleges a *source* of the fiduciary duty that lies outside of the alleged oral contract—his longstanding relationship with Small—but argues that RPS does not allege any independent *damages*, as all of the alleged damages stem from the alleged breach of the oral agency agreement. *Id.*

In its response, RPS does not specifically address the argument that it fails to allege damages separate from the oral agency agreement damages. Dkt. 61. RPS does, however, indicate that Mann received some personal benefit separate from the benefit to his companies through his alleged self dealing, including allegations that funds paid to the companies were diverted to other accounts by Mann for his personal use. *Id.* These allegations are also contained in the fourth amended complaint. *See* Dkt. 67.

In reply, the Land Defendants note that RPS dropped the breach of the oral agency agreement claim, but argue that everything about the breach of fiduciary duty claim relates to the alleged oral agency agreement, and "[a]rtful repleading and strategic claim dropping does not mean the economic loss rule no longer applies." Dkt. 62.

Under Texas law, the "economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). In determining if the economic loss rule applies, Texas courts look to both the "source of the alleged duty and the nature of the claimed injury." *Shopoff Advisors, LP v. Atrium Circle, GP*, 596 S.W.3d 894, 909 (Tex. App.—San Antonio 2019, no pet.). "[A] party may elect a recovery in tort if the duty breached stands independent from the contractual undertaking, and the alleged damages are not solely the result of a bargained-for contractual benefit." *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 268 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd). This is because "'[t]ort obligations are in general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others.'" *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (quoting W. Keeton et al., *Prosser and Keeton on the Law of Torts* § 92, at 65 (5th Ed. 1984)).

The economic loss rule does not apply to breaches of fiduciary duty that arose independent of a contract. *See, e.g.*, *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 658 (W.D. Tex. 2019); *James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce N.A., Inc.*, 403 S.W.3d 360, 366 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("The duty breached in this case—the fiduciary duty owed by an agent [to his principal]—did not arise from the contract.").

8

Under Texas common law, an "informal fiduciary duty may arise from a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998). The duty is not imposed lightly, and the "special relationship of trust and confidence must [have existed] prior to, and apart from, the agreement made the basis of the suit." *Id.* at 288.

Here, as the Land Defendants acknowledge, RPS alleges a source of duty separate from any alleged written or oral agreement—the longstanding relationship between Small and Mann. RPS describes the breach of fiduciary duty as invoicing RPS two and three times for the same work, entering into and supervising the Five Star MSA and placing his own interests above RPS's, concealing information from RPS, failing to require his companies to follow the contractual requirements, diverting funds for individual purposes, commingling funds, and self-dealing. Dkt. 67 (fourth amended complaint). RPS states that these breaches resulted in excessive costs to RPS, lost business opportunities, and damage to RPS's reputation and goodwill in the industry. *Id.*

While certainly some of the allegations relate to the alleged oral agreement between RPS and Mann, and some are tied to the written agreements between the companies, the allegations of a duty independent of the contracts and damages to RPS's reputation and goodwill resulting from Mann's alleged breach of his fiduciary duties to his long-time friend and business associate are sufficient at the motion to dismiss stage to state a plausible claim for relief that is not barred by the economic loss rule. Therefore, the Land Defendants' motion to dismiss the breach of fiduciary duty claim asserted against Mann as barred by the economic loss rule is **DENIED**.

B.   **Section 21.223**

The court dismissed the fraud claim asserted in the second amended complaint against Mann in his individual capacity pursuant to Texas Business and Organizations Code § 21.223 because there were no allegations of a direct personal benefit as opposed to benefits to Mann's companies. Dkt. 48. The Land Defendants now move to dismiss the breach of fiduciary duty, fraudulent inducement/fraud by nondisclosure claims, and tortious interference claims asserted against Mann in his individual capacity in the fourth amended complaint for the same reason. *See* Dkt. 55. RPS asserts that § 21.223 only bars claims against the owner of a company that are based on actions taken on behalf of the company, not actions taken for an individual's personal gain. Dkt. 61. RPS contends that the breach of fiduciary duty claim "has nothing to do with Mann's role as the owner or President of TLD or Cypress, nor does the claim relate to RPS's contract with either of Mann's closely held companies." *Id.* It asserts, in fact, that all of these tort claims relate to actions Mann took for his own personal gain. *Id.* Additionally, the tortious interference relates to the Five Star MSA, which RPS says Mann signed in his personal capacity. *Id.*

The court agrees that RPS has pled that Mann undertook the actions relating to each of these claims for his own personal benefit as opposed to solely for the benefit he received as President of his companies. As such, the motion to dismiss because section 21.223 protects Mann from liability for actions taken on behalf of his companies is **DENIED**.

C.   **Alter Ego**

RPS seeks to hold the Land Defendants jointly and severally liable to RPS for the damages discussed in the fourth amended complaint under an alter ego theory. *See* Dkt. 67 (fourth amended complaint). RPS alleges that Mann "completely dominated and controlled" his companies such that neither company had "a legal or independent significance on its own," and that he dictated the

10

actions of the companies, comingled funds of each company with his own personal funds, directed employees to engage in various activities solely for his personal benefit, and used funds wrongfully obtained by the companies to fund other drilling projects not related to the Norma #1 well. *Id.* The Land Defendants seek dismissal of RPS's claim that TLD and Cypress were each merely Mann's alter egos. Dkt. 55.

To determine if an alter ego relationship is established, the court must consider whether

> "(1) distinct and adequately capitalized financial units are incorporated and maintained; (2) daily operations of the two corporations are separate; (3) formal barriers between management of the two entities are erected, with each functioning in its own best interests; and (4) those with whom the corporations come in contact are apprised of their separate identity. Other factors deemed important by the commentators and Texas courts are: (1) common stock ownership; (2) the method and degree of financing of the subsidiary by the parent; (3) common directors or officers; (4) separate books and accounts; (5) common business departments; (6) extent to which contracts between parent and subsidiary favor one over the other; and (7) connection of parent's employee, officer or director to subsidiary's tort or contract giving rise to suit."

*Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1162–63 (5th Cir. 1983) (quoting *Miles v. Am. Tel. & Tel. Co.*, 703 F.2d 193 (5th Cir. 1983)). "Alter ego determinations are highly fact-based, and require considering the totality of the circumstances in which the instrumentality functions . . . . No single factor is determinative, [which] should be apparent from the extensive list of circumstances that courts have developed to guide alter ego determinations." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003). A "corporate veil may be pierced to hold an alter ego liable for the commitments of its instrumentality only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the corporate veil." *Id.* (emphasis added).

The Land Defendants assert that the court should require RPS's alter ego claims be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b). Dkt. 55 (citing *Garcia v. Peterson*, 319 F. Supp. 3d 863, 897 (S.D. Tex. 2018 (Miller, J.)). RPS does not contest the Land Defendants' assertion that Rule 9(b) applies. *See* Dkt. 61 (listing arguments as to why the pleading meets Rule 9(b) and not providing any argument or cases supporting a more lenient pleading standard). Because the parties agree that the Rule 9(b) standard applies, the court will consider whether RPS has pled its alter ego theory with particularity.

The Land Defendants argue that RPS fails to allege that Mann used the corporate structure for an illegitimate purpose and even if it had, it does not sufficiently allege an alter ego claim because it provides only conclusory allegations. Dkt. 55. The Land Defendants contend that RPS does not allege when the events happened, how they happened, or where they happened. *Id.*

RPS argues that it pled when, how, and where sufficiently to state its alter ego allegations with particularity. Dkt. 61. It points out that it pled that (1) Mann treated the companies as alter egos from the time Small and TLD entered into the TLD Agreement until RPS fired the Land Defendants from the project and filed this lawsuit; (2) Mann used the companies to divert funds to his own accounts for his personal use, comingled funds from the project in this case to Mann's other business ventures, and used funds from this project to fund his participation in other drilling projects; (3) Mann took these actions at Mann's Houston offices and at the Trinity Bend Prospect; and (4) Mann completely dominated and controlled TLD and Cypress, dictated their actions, and comingled funds. *Id.*

In reply, the Land Defendants argue that neither RPS's fourth amended complaint nor the response contain an allegation that Mann used the corporate fiction for an illegitimate purpose. Dkt. 62. They further argue that RPS's pleading merely "recite[s] some of the elements of alter

12

ego" but does not specify, for instance, how Mann dominated and controlled TLD and Cypress, how he dictated their actions, what actions he dictated, what funds were comingled, how Mann wrongfully used the funds, and what other drilling projects Mann improperly funded. *Id.*

First, there is an allegation of an illegitimate purpose—diverting company funds for Mann's own use and to fund other projects. However, this illegitimate purpose is not pled with particularity. While it is *plausible* that these companies were only created to perform services for RPS, Mann used their accounts as if the accounts were his personal bank account, and Mann used the corporate form to divert funds from RPS's project to other projects not associated with the companies, there are no details about such a plot in the complaint. Instead, as the Land Defendants claim, RPS uses the buzzwords for alter ego claims without adding any real substance, and the court is left to come up with its own story about how Mann's alleged comingling of funds and diversion of funds for his own personal benefit was an abuse of the corporate form so that Mann could benefit to RPS's detriment. The court finds that RPS has not pled its alter ego claim with particularity. The motion to dismiss the alter ego claim is **GRANTED,** and the claim based on the alter ego theory is **DISMISSED**.

**D. Tortious Interference**

RPS alleges in the fourth amended complaint that the Land Defendants willfully and intentionally interfered with the JOA, with various vendor agreements, and with the Five Star MSA. Dkt. 67. According to RPS, Mann dictated the work to be performed by Five Star and delayed completion of the Norma #1 well for his own personal benefit, which was a direct breach of the Five Star MSA and the JOA. *Id.* RPS asserts that these breaches directly caused RPS injuries and caused financial and reputational damage to RPS. *Id.* RPS additionally alleges that the Land Defendants failed to follow proper procedures and pay invoices, which directly interfered

with the JOA and vendor contracts because participants consequently discontinued paying expenses. *Id.*

The Land Defendants move for dismissal of the tortious interference claims, arguing that RPS's tortious interference with contract claims fail because RPS does not allege that any of the Land Defendants was acting solely for its/his own benefit; instead, the motives for the alleged interference are mixed. Dkt. 55. The Land Defendants assert that, moreover, even if mixed motives were enough for a tortious interference claim, the allegations are simply that Mann dictated Five Star's work to delay completion for his personal benefit, which are mere labels and conclusions without factual support. *Id.* Additionally, the Land Defendants contend that RPS fails to allege that the Land Defendants' failures under the JOA were done with the knowledge or belief that it would lead to interference with the contract. *Id.*

RPS argues that the case relied upon by the Land Defendants to assert there can be no mixed motive would require Mann's actions to benefit both Mann and *RPS*. Dkt. 62. RPS asserts that Mann's actions in directing Five Star's work to RPS's detriment was outside the scope of his agency and benefitted Mann and, at most, his companies—not RPS. *Id.*

Under Texas law, "[t]he elements of tortious interference with contract are (1) a contract subject to interference; (2) a willful and intentional act of interference (3) that was a proximate cause of the plaintiff's damages; and (4) actual damage." *Cuba v. Pylant*, 814 F.3d 701, 717 (5th Cir. 2016) (citing *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996)). The plaintiff must show that "'the defendant knowingly induced one of the contracting parties to breach its obligations under the contract.'" *Id.* (quoting *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 203, 210 (Tex. 1996)). "[A] person must be a stranger to a contract to tortiously interfere with it." *Morgan Stanley & Co., Inc. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997). In order

for an agent to be liable for interfering with a party's contractual relationships, the agent must be acting outside of the scope of the agent's duties. *Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 575 (S.D. Tex. 2020) (Lake, J.). "To meet this standard, the agent's actions must be solely for his own benefit; actions of mixed motive are not sufficient." *Id.*

The court agrees with RPS that the mixed motive referred to in the caselaw is with regard to an agent acting to benefit both himself or herself and the company it is representing as an agent, which in this case would mean Mann was acting both to benefit himself and RPS, not himself and the other Land Defendants. *See Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998) ("The plaintiff must prove that the agent acted willfully and intentionally to serve the agent's personal interests at the corporation's expense."). The new allegations in the fourth amended complaint are that Mann and his companies purposefully delayed completion of the well for the sole benefit of Mann and his companies, which in turn allegedly caused problems with the participants in the JOA and resulted in harm to RPS's reputation. The court finds that RPS has plausibly alleged tortious interference with the Five Star MSA. The motion to dismiss the tortious interference with the Five Star MSA is **DENIED**.

However, there are also allegations in the fourth amended complaint for tortious interference with the JOA and "various vendor agreements." Dkt. 67. The Land Defendants move to dismiss these claims as well, arguing that RPS fails to allege that the Land Defendants' failures with regard to these contracts were with knowledge and belief that it would interfere with the contracts. Dkt. 55. RPS does not respond to this argument. *See* Dkt. 61. Under Local Rule 7.4, failure to respond is taken as a representation of no opposition. S.D. Tex. L.R. 7.4. Moreover, the court agrees that there is nothing in the fourth amended complaint indicating that the Land Defendants did not follow the proper accounting procedures and otherwise failed to properly

perform operator duties intentionally because they wanted to interfere with RPS's contracts and business relationships. Accordingly, the motion to dismiss the intentional interference with contract claims as they relate to contracts other than the Five Star MSA is **GRANTED**, and these claims are **DISMISSED**.

E.     **Fraudulent Inducement**

The Land Defendants move to dismiss the fraudulent inducement claims for failure to plead with particularity under Rule 9(b). Dkt. 55. In the response, RPS claims its fourth amended complaint dismisses its claims for fraudulent inducement against Mann and TLD and retains the claim of fraudulent inducement against Cypress. Dkt. 61. It asserts that the Land Defendants admit that the complaint is sufficient to state a claim against Cypress for fraudulent inducement. *Id.* at 2 & n.2. The Land Defendants, however, do not actually *admit* that the complaint is sufficient to state a claim for fraudulent inducement against Cypress. Their motion to dismiss states that "[*a*]*t best*, RPS has stated a claim that Defendants fraudulently induced RPS into entering the Cypress Agreement." Dkt. 55 at 9. The Land Defendants still argue in the motion that the fraudulent inducement claims against all defendants were not pled with particularity, and their attached proposed order dismisses the fraudulent inducement claims against all three defendants with prejudice. *See* Dkt. 55 & Ex. 1. The court is thus left with a motion that conclusorily asserts the claim is not pled with particularity and then acquiesces that it might be sufficient with regard to Cypress, and no real response from the plaintiff. *See* Dkts. 55, 61. In the reply, the Land Defendants point to the section of the motion to dismiss that seeks dismissal of the fraudulent inducement claims as still being relevant even though RPS amended the complaint. *See* Dkt. 62. The Land Defendants thus half-heartedly continue to move to dismiss the fraudulent inducement claim against Cypress because it is not pled with particularity.

To state a claim of fraudulent inducement under Texas law, the plaintiff must allege the basic elements of fraud: "(1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury." *Anderson v. Durant*, 550 S.W. 605, 614 (Tex. 2018). The misrepresentation in a fraudulent inducement case must be "a false promise of future performance made with a present intent not to perform," and "the existence of a contract is an essential part of [the] proof" of a fraudulent inducement claim. *Id.* Claims alleging fraudulent inducement, like general fraud claims, must be pled with particularity. *Bohnsack v. Varco*, 668 F.3d 262, 277 (5th Cir.2012).

The court has reviewed the complaint, and finds that there is enough information about who, what, when, where, and how Cypress induced RPS into signing an agreement for it to continue TLD's work on the project even though at that point it knew or should have known it did not have the experience to keep up with RPS's operator obligations. The motion to dismiss the fraudulent inducement claim as to Cypress is therefore **DENIED**.

Notwithstanding RPS's assertions that it dismisses the fraudulent inducement claims against Mann and TLD in the fourth amended complaint, the fourth amended complaint continues to assert fraudulent inducement claims against all three defendants. *See* Dkt. 67. The court views this as a mere oversight. Moreover, even if it were not an oversight, RPS does not argue that it has pled these claims with particularity in its response. *See* Dkt. 61. The court also finds that it has not. Accordingly, to the extent these claims were meant to still be in the fourth amended complaint, the motion to dismiss the fraudulent inducement claims against Mann and TLD is **GRANTED**, and these claims are **DISMISSED**.

## IV. Conclusion

The Land Defendants' motion to partially dismiss the claims in the fourth amended complaint (Dkt. 55) is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** with respect to the alter ego claims, the claims that the Land Defendants tortiously interfered with the JOA and various vendor agreements, and the claims that fraudulent inducement claims against Mann and TLD. Those claims are **DISMISSED WITH PREJUDICE**. It is otherwise **DENIED**.

Signed at Houston, Texas on July 16, 2021.

_____
Gray H. Miller
Senior United States District Judge